UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

Appeal No. 22-3059

_____

KARL W. NICHOLS,

     Petitioner-Appellant,

     v.

LANCE WIERSMA,

     Respondent-Appellee.

_____

**APPEAL FROM A FINAL JUDGMENT DENYING PETITION
FOR WRIT OF HABEAS CORPUS ENTERED IN THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN,
HONORABLE WILLIAM M. CONLEY, PRESIDING**

_____

**BRIEF AND SHORT APPENDIX OF PETITIONER-APPELLANT**

_____

ANTHONY J. JUREK
STROUD, WILLINK & HOWARD, LLC.
33 East Main Street, Suite 610
Madison, Wisconsin 53703
(608) 661-1054

Counsel for Petitioner-Appellant

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

The undersigned, counsel for the appellant, KARL W. NICHOLS, furnishes the following list in compliance with Circuit Rule 26.1 (7th Cir.):

(1)     The party represented is KARL W. NICHOLS.

(2)     Law firms which have represented the party in this matter:

Stroud, Willink & Howard, LLC

Stangl Law Offices SC (state court)

(3)(i)  N/A

(3)(ii) N/A

(4)     N/A

(5)     N/A

Dated: December 27, 2022          ___s/ ANTHONY J. JUREK___
                                  ANTHONY J. JUREK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................... 4

JURISDICTIONAL STATEMENT ........................................... 7

STATEMENT OF ISSUE PRESENTED FOR REVIEW ........ 8

STATEMENT OF THE CASE
AND STATEMENT OF FACTS............................................. 8

    Procedural History of the Case ............................................. 8
    State Court Evidence............................................................ 10

SUMMARY OF ARGUMENT ............................................. 15

STANDARD OF REVIEW ................................................... 18

    A.    Review of District Court Decision............................ 18
    B.    Review of State Court Decision ................................ 19

ARGUMENT ........................................................................ 22

**I.  The decision of the Court of Appeals is contrary to,
or an unreasonable application of, clearly established
Federal law as determined by the U.S. Supreme Court.**......25

**II.  The Court of Appeals' Decision is based on an
unreasonable determination of facts in light of the
evidence presented in the State court proceeding.**................29

**III.  The State's failure to preserve exculpatory evidence
was not harmless error:**........................................................ 37

**IV.  The issue of ineffective assistance of counsel
was not waived by the petitioner's asserted failure to
include it in a petition for review to the Wisconsin
Supreme Court.**.........................................................................37

CONCLUSION ...................................................................... 39

RULE 32(a)(7) CERTIFICATION .......................................... 39

## TABLE OF AUTHORITIES

**Cases**

*Arizona v. Youngblood*, 488 U.S. 51 (1988) ................ 23, 24, 28

*Boyce v. Soto*, Dist. Court, ND California 2017) ..................... 31

*Brady v. Maryland*, 373 U.S. 83 (1963) .................................. 22

*California v. Trombetta*, 467 U.S. 479 (1984) ........ 22-24, 27, 28

*Cogswell v. Robershaw Controls Co.*, 274 NW 2d 647 (1979) ...................................................................... 31

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) .............................. 22

*Hall v. Washington*, 106 F.3d 742, 748 (7th Cir. 1997) .... 20, 30

*Hicks v. Oklahoma*, 447 U.S. 343 (1980) ................................ 31

*Illinois v. Fisher*, 540 U.S. 544, 124 S. Ct. 1200, 157 L.Ed.2d 1060 (2004) ........................................................ 23

*Jones v. McCaughtry,* 965 F. 2d 473, (7th Cir. 1992) .............. 24

*Kyles v. Witley*, 514 U.S. 437 (1995) ........................... 22-23, 37

*Lechner v. Frank,* 341 F.3d 635 (7th Cir.2003) ....................... 18

*Mendiola v. Schomig*, 224 F.3d 589 (7th Cir. 2000) .............. 30

*Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000) ................... 20

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ....................... 21, 30

*Miranda v. Leibach*, 394 F. 3d 984 (7th Cir. 2005)................. 21

*Muth v. Frank*, 412 F.3d 808 (7th 2005) ........................... 20, 26

*Panetti v. Quarterman*, 551 U.S. 930 (2007)........................... 21

*Spencer v. Kemna*, 523 U.S. 1 (1988)....................................... 8

*State v. Echols*, 175 Wis. 2d 653, 499 N.W.2d 631 (1993) 31-32

*State v. Hahn*, 132 Wis. 2d 351,
392 N.W.2d 464 (Ct. App. 1986).............................................. 24

*State v. Huggett*, 2010 WI App 69,
324 Wis. 2d 786, 783 N.W.2d 675 .......................................... 24

*State v. Martwick*, 2000 WI 5, 231 Wis. 2d 801,
604 N.W.2d 552 ....................................................................... 31

*State v. Shiffrs*, 175 Wis.2d 600,
499 N.W.2d 719 (1993) ............................................................ 28

*State v. Turner*, 136 Wis.2d 333 (1987) ................................. 28

*State v. Young*, 2009 WI App 22, 316 Wis. 2d 114,
762 N.W.2d 736 ....................................................................... 32

*Stern v. Meisner*, 812 F.3d 606 (7th Cir. 2016) ...................... 19

*United States v. Agurs*, 427 U.S. 97 (1976)............................. 22

*United States v. Bagley*, 473 U.S. 667 (1985) ........................ 22

*Ward v. Sternes*, 334 F.3d 696 (7th Cir. 2003)....................... 21

**Constitution, Rules and Statutes**

28 U.S.C. §§1291 & 2253......................................................... 7

28 U.S.C. §§2241 & 2254 ........................................................ 7

28 U.S.C. §2254 ........................................................ 7, 8, 18

28 U.S.C. §2254(d) ........................................................ 19-21

28 U.S.C. §2254(d)(2) ........................................................ 20

Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. 104, 110 Stat. 1214 ("AEDPA") ........................... 19-20

Fed. R. App. P. 4(b)(3) ........................................................ 7

## Other Authorities

Teresa N. Chen, *The Youngblood Success Stories:
Overcoming the "Bad Faith" Destruction of
Evidence Standard*, 109 W. VA. L. REV. 421, 422 (2007) .... 24

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

Appeal No. 22-3059

_____

KARL W. NICHOLS,

     Petitioner-Appellant,

     v.

LANCE WIERSMA,

     Respondent-Appellee.

_____

**BRIEF OF PETITIONER-APPELLANT**
_____

**JURISDICTIONAL STATEMENT**

KARL W. NICHOLS appeals from the final judgment entered by the district court on October 17, 2022, dismissing KARL W. NICHOLS' Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. The district court had jurisdiction to hear this appeal under 28 U.S.C. §§2241 & 2254. The Court of Appeals has jurisdiction to hear this appeal under 28 U.S.C. §§1291 & 2253. The notice of appeal was filed with the district court on November 15, 2022.

There are no motions for a new trial or alteration of the judgment, or any other motion which would toll the time in which to appeal pursuant to Fed. R. App. P. 4(b)(3).

There are no prior or related federal appellate proceedings in this case.

This is a collateral attack on KARL NICHOLS' criminal conviction in Wisconsin state court. KARL NICHOLS has completed his term of incarceration and is no longer in custody. KARL NICHOLS nonetheless satisfies the requirements for a petition under 28 U.S.C §2254 because his petition was filed before his sentence was complete and his petition is not moot because he remains subject to ongoing collateral consequences of his conviction, including but not limited to having to register as a sex offender. *Spencer v. Kemna*, 523 U.S. 1, 7 (1988).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the State violated the Constitution by failing to turn over before or during trial a written list of corrections that a child witness had made regarding her statements at a forensic sexual assault interview.

2. Whether Nichols' trial counsel was ineffective for failing to object to the same.

## STATEMENT OF THE CASE AND STATEMENT OF FACTS

**Procedural History of the Case**

The Dane County Circuit Court judge in this case—who had presided at extensive pretrial proceedings, a three-day trial, and extensive postconviction evidentiary proceedings—found that the State had acted in bad faith thrice over when it failed to preserve evidence which had exculpatory value that was apparent, and that no comparable evidence could be obtained by reasonably available means.

*See* Decision and Order of the Circuit Court, December 1, 2015, R.5:Exh. 2; App. 122-151. The unpreserved evidence was a list of corrections by a child-victim in a first-degree sexual assault of a child case, written after she had reviewed the video of her first interview and which she had attempted to share with the interviewer at the videotaped second interview. *Id*. at 21-44; App. 142-145. The circuit court knew the content of one of the corrections, that the list contained more corrections, and found that the list was material and exculpatory. *Id*. The circuit court found that the State had acted in bad faith when the interviewer immediately recognized the exculpatory nature of the list and hurried to terminate the interview before the rest could be disclosed, and that the detective recognized the significance of the evidence and had acted in bad faith in mischaracterizing and minimizing the corrections in her police report. *Id*. at 25-27; App. 146-148. The circuit court found that the prosecution had shirked its constitutional duties to affirmatively seek and preserve evidence, despite separate reminders and orders from the circuit court that it do so. *Id*. The circuit court found that the State was aware of the exculpatory value of the corrections and made conscious efforts to suppress that exculpatory evidence. *Id*.

The Court of Appeals, contextualizing this case primarily as an ineffective assistance of counsel case, employed a *de novo* standard of review and based on its viewing of the second forensic interview video decided that the list "lacked any

exculpatory value." *See* Decision of the Court of Appeals, March 30, 2017; R.5:Exh. 6:15, ¶45; App. 115. The Court of Appeals, based solely on its viewing of that video, decided that the exculpatory nature of the list was not apparent to the interviewer. *Id.* at 13, ¶37; App. 113. In reference to the violation of due process, the Court of Appeals wrote with apparent reference to its reasoning on the ineffective assistance issue "Regardless, his due process claim fails because, as we have already explained, the list lacked any exculpatory value." *Id.* at 15, ¶45; App. 115. The Court of Appeals did not discuss the materiality of the evidence or its characterization as "apparently" or "potentially" exculpatory outside of its ineffective assistance analysis. *See* Decision of the Court of Appeals, March 30, 2017; R.5:Exh. 6. The Court of Appeals did not address the circuit court's findings of bad faith. *Id.*

The Wisconsin Supreme Court denied a petition for review (R.5:Exh.8), and Nichols timely petitioned the District Court for a Writ of Habeas Corpus (R.1). The District Court denied the petition, and denied a certificate of appealability. R. 15. Nichols timely petitioned this Court for a certificate of appealability (R. 18), which was granted on the issues listed above.

### State Court Evidence

Karl W. Nichols was charged with first-degree sexual assault of a child in 2012. Circuit Court Decision, December 1, 2015, R.5:Exh.2; App. 123. The factual

basis for the charge was that in 2005 he had sexual contact with a then four-year old, M.R.W. *Id*. at 2; App. 123. She was the same age as Nichols' oldest son, and part of a child care co-op. *Id*. In 2011, when M.R.W. was ten, she told her mother that during a sleep-over at the Nichols' when she was four she awoke and went upstairs to see Nichols. *Id*. She told her mother that she sat on his lap, and that he put his fingers on both the outside and inside of her vagina. *Id*. M.R.W. participated in two forensic interviews in Kansas, where she lived with her family. *Id*. After reviewing the video of the first forensic video, which had occurred on September 26, 2011, the Dane County District Attorney's Office requested that another interview be conducted in cooperation with City of Madison Police Detective Justine Harris, who participated by phone. *Id*. The second interview, at the behest of the District Attorney's Office, was conducted on December 22, 2011. *Id*.

As the second interview was ending, interviewer Jane Holzrichter asked about a pad of paper that M.R.W. had been holding throughout the interview:

> Q: Um, well, did you write some things down that you were wondering about or did you write it down for someone?
> A: I wrote some things that I think I, I changed from the last interview.

*Id*. at 16-17; App. 137-138. One correction listed on M.R.W.'s pad of paper was briefly discussed. *Id*. at 17; App 138. M.R.W. corrected her prior statement from the first interview that Nichols had suggested she take off her clothes; rather, she had taken them off of her own volition. *Id*. This correction was dismissed by the

interviewer as merely being M.R.W.'s erroneous memory of the first interview. *Id*. However, a review of the first interview clearly shows that M.R.W. did, in fact, say that the Defendant would "encourage" her and "even suggested" that she take off some clothes. *Id*. After dismissing M.R.W.'s first proper correction, the interviewer stood up, walked toward the door and indicated that M.R.W. could say goodbye to Detective Harris on the phone. *Id*. M.R.W. stood up with her pad of paper, followed Holzrichter, and as she raised her pad of paper said "First can I tell you, um, the rest of this?" *Id*.

Continuing to walk out of the room, the interviewer responded "Sure. We can do that and then I'm going to take a copy of it so that they can have it, too." *Id*. at 18; App. 139.

The Complaint against Nichols was filed in March of 2012. *Id*. at 2; App. 123. On December 3, 2012, the circuit court ordered that the prosecution may not destroy or alter any physical evidence in its possession, that the prosecution was to review all police rough notes to determine if they contained any potentially exculpatory information, and the prosecution must turn over to the defense all audio and video recordings. *Id*. ar 3; App. 124. On April 19, 2013 the court ruled that the prosecution had an affirmative duty to check if it had in its possession (which included the possession by the Kansas facility who conducted the interviews) exculpatory information and turn it over to the defense. *Id*.

Jury selection occurred on November 11, 2013, with a three-day trial following. *Id*. at 4; App. 125. The jury returned a verdict of guilty. *Id*. The court sentenced the Defendant on June 2, 2014, withholding sentence and placing Nichols on probation for 5 years with several conditions, including conditional jail time if he failed to obtain sex offender treatment. *Id*.

Nichols timely filed a Motion for Postconviction Relief on May 29, 2015. *Id*.

Briefs were filed both before and after postconviction evidentiary hearings which spanned three days. *Id*.

The circuit court denied Nichols' request for relief based on evidentiary rulings and most of the alleged instances of ineffective assistance of counsel. *See generally* R.5:Exh.2 (Circuit Court Decision, December 1, 2015). It detailed the law relating to assertions of failure to preserve exculpatory evidence, recounted relevant facts from previous proceedings, and made its own extensive findings with pinpoint citations to the record. *Id*.

The circuit court concluded that the evidence the State failed to preserve was "apparently exculpatory" and that no comparable evidence was available to the defense. *Id*. at 21-25; App. 142-146. The circuit court further found that even if the evidence were merely "potentially exculpatory," the State had acted in bad faith thrice over in failing to preserve it: That the exculpatory nature of the list was

immediately apparent to Holzrichter and that she hurried to cut off the interview before any more could be disclosed: That Holzrichter

> conveniently claimed no memory of anything on the list or anything she did with the list. Interviewer Holzrichter's obvious attempts to conceal M.R.W.'s written corrections constitute bad faith.

*Id.* at 25-27; App. 146-148. As to Harris,

> [Detective Harris] knew, at the time, that M.R.W. had brought a written list of corrections to the 2nd interview. She knew, at the time, that M.R.W. was allowed to divulge only one of her multiple corrections. Detective Harris also knew that her police reports were to include any exculpatory information. She knew those reports would be handed over to the defense during discovery. Yet, in her police report describing the 2nd interview, she wrote: '[M.R.W.] stated that she did watch the video of her and Holzrichter's interview and that what she said in the interview was true <u>with one correction.</u>' Id. At 87:23-88:6 (emphasis added); 9/14/15 P.C. Exh. 18. To believe that Detective Harris' police report coincidentally erred in describing the coincidentally unpreserved evidence is simply unbelievable. Detective Harris' erroneous police report misled the defense and demonstrates bad faith.

*Id.* The circuit court also found that the prosecutor, who had been warned throughout the case of the need to preserve and disclose evidence, failed to affirmatively fulfill his constitutional duty to find, preserve and turn over exculpatory evidence. *Id.* The circuit court found in a short section of its decision that though it had denied the Defendant's assertions of ineffective assistance in other regards, that trial counsel had performed ineffectively in not raising the issue of failure to preserve exculpatory evidence before trial. *Id.* at 28-29; App. 149-150.

The trial court judge who had noted at sentencing that she thought the jury got it right (R.5:Exh.26:51:9, Sentencing Hearing June 2, 2014), wrote that her confidence both in the trial and in the verdict was shaken. Circuit Court Decision, December 1, 2015, R.5:Exh.2:23; App. 144.

The circuit court found that the only appropriate remedy in light of the State's failure to preserve exculpatory evidence was to vacate the judgment of conviction and dismiss the case with prejudice. *Id*. at 27-28; App. 148-149.

The State appealed. R.5:Exh.6. The Court of Appeals framed this as an ineffective assistance of counsel case and reversed the circuit court. *Id*.

Nichols petitioned the Wisconsin Supreme Court for review, urging that the Court of Appeals opinion was in conflict with well-established precedent of the U.S. Supreme Court. R.5:Exh.7. The Wisconsin Supreme Court denied the petition for review. R.5:Exh.8. Nichols petitioned the District Court for habeas relief. R.1. Briefing was completed in April of 2019. R.10. In October of 2022, the District Court denied the petition and a certificate of appealability, discussed in more detail below. R.15. A notice of appeal and motion for a certificate of appealability were timely filed. R.18. A certificate of appealability was granted on the issues listed above.

## SUMMARY OF ARGUMENT

The evidence that the State failed to preserve—a written list of corrections by a child sexual assault victim to her own statements—was "apparently exculpatory" as that term is used in failure-to-preserve-evidence-jurisprudence: The exculpatory value of it was apparent to the State at the time the State failed to preserve it. Even if the exculpatory value wasn't apparent, the evidence could only

be otherwise characterized as "potentially exculpatory" (which includes even evidence that is more likely incriminating than not), in which case Nichols would still be entitled to relief upon a showing of bad faith. That showing was satisfied three times over in the view of the only court to have held a hearing on the matter, which found bad faith on the part of the forensic interviewer, on the part of the investigating detective, and on the part of the prosecutor. The same judge who had presided over pretrial motions, the jury trial, conviction, and sentencing of Nichols also presided at extensive postconviction evidentiary proceedings and issued a written decision that her confidence in both the fairness of the trial and in the verdict was shaken.

The Dane County Circuit Court was entirely correct in matters of both fact and law in its written decision in this case. The Wisconsin Court of Appeals was wrong in reversing the Dane County Circuit Court, rendering a decision contrary to and/or an unreasonable application of clearly established Federal law as determined by the U.S. Supreme Court and based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

The Court of Appeals avoided the U.S. Supreme Court's required failure-to-preserve-exculpatory-evidence analysis which categorizes even likely inculpatory evidence as "potentially exculpatory" by seemingly construing the unpreserved list

of corrections as somehow outside the purview of such analysis. Since both apparently exculpatory and likely inculpatory evidence falls within that purview, the Court of Appeals refusal to apply the clearly established federal law as determined by the U.S. Supreme Court is an unreasonable application of that law.

The Court of Appeals also rendered a decision based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding. To the extent that the Court of Appeals made any findings of fact, they were unreasonable in light of the evidence presented in State court proceedings. The Court of Appeals, conflating a video that demonstrated the existence of a list of corrections with the list of corrections itself so it could apply a *de novo* standard of review and avoid the deference it owed the circuit court, found that the interviewer's behavior on the video was innocent. But the interviewer's behavior on the video was not all that the circuit court's decision was based on: Rather, it was based on the circuit court's viewing of the video and the interviewer's testimony and behavior while testifying during the evidentiary proceedings. The Court of Appeals single contrary finding of fact cannot reasonably be said to sweep away the rest of the circuit court's articulated findings of fact.

Likewise, the Court of Appeals pretending that the circuit court did not make an explicit finding of bad faith regarding the investigating detective is clearly belied by the circuit court's written decision.

The District Court erred in granting a degree of deference to the Wisconsin Court of Appeals that it was not owed, preserving the Wisconsin Court of Appeals unreasonable application of law and unreasonable determination of facts.

## STANDARD OF REVIEW

For reasons stated in this section, this Court's review in this case will essentially be *de novo*. The District Court held no hearings and made no findings of fact, leaving rulings on issues of law to be independently reviewed. This Court's examination of the written opinions of the circuit court and Court of Appeals are likewise *de novo*, as to whether clearly established Federal law as determined by the U.S. Supreme Court was reasonably applied, and whether the Court of Appeals' determination of facts in light of the evidence presented in the circuit court (the only evidentiary State court proceeding) was reasonable.

### A.    Review of District Court Decision

When reviewing a district court's ruling on a habeas corpus petition, this Court reviews the district court's factual findings for clear error and rulings on issues of law *de novo. Lechner v. Frank,* 341 F.3d 635, 638 (7th Cir. 2003) (citation omitted). [This] petition was brought pursuant to 28 U.S.C. § 2254, which limits the issuance of a writ of habeas corpus to only those claims that '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d). *Stern v. Meisner*, 812 F.3d 606, 609 (7th Cir. 2016).

### B.    Review of State Court Decision

Demonstrating a prejudicial constitutional violation generally is not alone sufficient for habeas relief. As amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104, 110 Stat. 1214 ("AEDPA"), 28 U.S.C. §2254(d) provides that a habeas application "shall not be granted" with respect to a claim the state courts adjudicated on the merits unless the adjudication of the claim –

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The Seventh Circuit has explained the applicable legal standards under the AEDPA as follows:

> "[A] state court decision is 'contrary to' federal law if the state court either incorrectly laid out governing Supreme Court precedent, or, having identified the correct rule of law, decided a case differently than a materially factually indistinguishable Supreme Court case." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir.2004), *cert. denied*, --- U.S   , 125 S.Ct. 1399, 161 L.Ed.2d 193 (2005). "An 'unreasonable application' of Supreme Court precedent occurs when 'the state court identifies the correct governing legal rule. . .

19

> but unreasonably applies it to the facts of the particular state prisoner's case' or 'if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Dixon v. Snyder,* 266 F.3d 693, 700 (7th Cir.2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Clearly established" Supreme Court precedent is "the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

*Muth v. Frank*, 412 F.3d 808, 813-14 (7th 2005).

That Court has construed this provision as requiring *de novo* review only of purely legal questions to determine if the state court cited the correct Supreme Court precedents, and "reasonableness" review regarding application of that precedent to the particular facts of the case:

> Under these new standards, our review of state courts' legal determinations continues to be *de novo*. So, too, does our review of mixed questions of law and fact. [Citations omitted]. Under the AEDPA, however, we must answer the more subtle question of whether the state court "unreasonably" applied clearly established federal law as the Supreme Court has determined it. *Pitsonbarger v. Gramley*, 103 F.3d 1293, 1297-98 (7th Cir. 1996).

*Hall v. Washington*, 106 F.3d 742, 748 (7th Cir. 1997). The *Hall* Court went on to hold, however, that the reasonableness standard is not a toothless one:

> The statutory "unreasonableness" standard allows the state court's conclusion to stand if it is one of several equally plausible outcomes. On the other hand, Congress would not have used the word "unreasonable" if it really meant that federal courts were to defer in all cases to the state court's decision. Some decisions will be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary, that a writ must issue.

*Id.* at 748-49. "Unreasonableness is judged by an objective standard." *Morgan v. Krenke*, 232 F.3d 562, 565 (7th Cir. 2000), *cert. denied*, 532 U.S. 951 (2001).

Under 28 U.S.C. §2254(d)(2), a federal court also may grant habeas relief to one in custody in violation of the Constitution when the state court's decision rests

upon factual determinations that are objectively unreasonable in light of the evidence presented in the state court proceedings. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "A state court decision that rests upon a determination of fact that lies against the clear weight of the evidence is, by definition, a decision 'so inadequately supported by the record' as to be arbitrary and therefore objectively unreasonable." *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003) (citations omitted). The Court also may find a state court factual determination unreasonable where the state court failed to consider key aspects of the record. *Miller-El*, 537 U.S. at 346-47.

The Supreme Court also has made clear, moreover, that deference to state court decisions is limited to that expressly provided under §2254(d). Thus,

> [w]hen a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in §2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires. [Citations omitted].

*Panetti v. Quarterman*, 551 U.S. 930, 953-54 (2007).

The Seventh Circuit has instructed that "an appellate court is empowered to make a factual determination, and on habeas review we must grant that determination the same presumption of correctness as we would to a trial court's finding of fact." *Miranda v. Leibach*, 394 F. 3d 984, 999, (7th Cir. 2005)(internal citations omitted).

## ARGUMENT

The U.S. Supreme Court has established that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that criminal prosecutions conform to fundamental notions of fairness and that defendants be given "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). The U.S. Supreme Court has established that the State in a criminal prosecution must disclose material exculpatory evidence to the defendant. See *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 97 (1976). The U.S. Supreme Court has determined that a prosecutor has a constitutional obligation to learn of, to preserve, and to communicate with the defense about exculpatory and impeachment evidence in the government's possession*." Garcetti v. Ceballos*, 547 U.S. 410, 447 (2006) (citing *Kyles v. Witley*, 514 U.S. 437 (1995)). The U.S. Supreme Court has determined that for the purposes of disclosure and preservation, there is no distinction between exculpatory as compared to impeachment or credibility evidence. *Kyles*, 514 U.S. at 433; *United States v. Bagley*, 473 U.S. 667, 676 (1985). There is also no distinction between evidence specifically requested, generally requested, or not requested at all. *Kyles*, 514 U.S. at 433; *Bagley*, 473 U.S. at 682. Further, evidence in the State's possession includes evidence in the possession of those acting on behalf of the State: "[T]he individual prosecutor has a duty to learn of any

favorable evidence known to the others acting on the government's behalf in the case…" *Kyles* 514 U.S. at 437.

To trigger a prosecutor's duty to disclose or preserve, the exculpatory evidence must be material. *Arizona v. Youngblood*, 488 U.S. 51, 60 (1988). It is such evidence as "might be expected to play a significant role in the suspect's defense." *Id.* at 60 (quoting *Trombetta*, 476 U.S. at 488).

The U.S. Supreme Court has determined that a due process violation occurs when the State either:

1)    Failed to preserve evidence that was apparently exculpatory, or

2)    Acted in bad faith by failing to preserve evidence that was potentially exculpatory. *See Youngblood*, 488 U.S. at 57-58.

Exculpatory evidence comes in two varieties: "potentially exculpatory" and "apparently exculpatory." *E.g., Arizona v. Youngblood*, 488 U.S. 51, 56-59, 109 S. Ct. 333, 102 L.Ed.2d 281 (1988). "Potentially exculpatory" evidence is the sort that may exculpate a defendant, but may also be inculpatory. *Illinois v. Fisher*, 540 U.S. 544, 548, 124 S. Ct. 1200, 1202, 157 L.Ed.2d 1060, 1066 (2004). Examples of this type of evidence are blood that has been tested but not preserved for retesting. *E.g. Youngblood*, *Fisher*. The U.S. Supreme Court has found that evidence which is more probably *inculpatory* than exculpatory is properly designated "potentially exculpatory." *E.g. Fisher*, 540 U.S. at 548. In order to

obtain relief in such cases, defendants must not only show the failure to preserve the evidence, but that the State acted in bad faith in failing to preserve it. *Ariz. v. Youngblood*, 488 U.S. at 57-58, etc. Bad faith in this context is not merely negligence, but official animus or a conscious effort to suppress. *Trombetta*, 467 U.S. at 488 (1984), *Jones v. McCaughtry, 965 F. 2d 473, 477 (7ᵗʰ Cir. 1992)*.

There are few examples of such bad faith. Teresa N. Chen, *The Youngblood Success Stories: Overcoming the "Bad Faith" Destruction of Evidence Standard*, 109 W. VA. L. REV. 421, 422 (2007) (finding in 2007 that in more than 1500 published cases citing *Youngblood*, only seven found bad faith).

"Apparently exculpatory" evidence is the sort of evidence that has an exculpatory value that is apparent to the State. *Trombetta* at 489. Additionally, evidence of comparable value cannot be available to the defense. *Id*. Wisconsin examples of apparently exculpatory evidence include a truck with a defective steering column that was destroyed before the defense could examine it in a homicide by intoxicated use of a motor vehicle case (*State v. Hahn*, 132 Wis. 2d 351, 360, 392 N.W.2d 464, 466 (Ct. App. 1986)); and destruction of threatening voicemails left by the victim in a homicide case (*State v. Huggett*, 2010 WI App 69, ¶28, 324 Wis. 2d 786, 783 N.W.2d 675). If the State fails to preserve apparently exculpatory evidence, it is a due process violation. *Id*.

Under the plain articulation of exculpatory evidence jurisprudence outlined

above, the denial of Nichols' due process rights are clear. The circuit court found that the State acted in bad faith three times over; the circuit court found that the exculpatory nature of the evidence was apparent to the State before it destroyed the evidence; and the circuit court found that the evidence was of such a nature that Nichols was unable to obtain comparable evidence by other reasonable means. The Court of Appeals' decision reversing the circuit court did not address those findings, or to the extent that they arguably may have, their contrary findings were unreasonable in light of the evidence presented at the circuit court proceeding.

I.    **The decision of the Court of Appeals is contrary to, or an unreasonable application of, clearly established Federal law as determined by the U.S. Supreme Court.**

The Court of Appeals' decision in this case conflicts with well-established constitutional precedent of the U.S. Supreme Court. Rather than squarely address the circuit court finding that the unpreserved evidence was exculpatory within the context of controlling law, the Court of Appeals considered it in the context of an ineffective assistance framework and created a new category of evidence apart from "potentially exculpatory" or "apparently exculpatory": Evidence that "lacked any exculpatory value."

"[A] state court decision is 'contrary to' federal law if the state court either incorrectly laid out governing Supreme Court precedent, or, having identified the correct rule of law, decided a case differently than a materially factually indistinguishable Supreme Court case." *Conner v. McBride,* 375 F.3d 643, 649 (7th Cir.2004), *cert. denied,* --- U.S , 125 S.Ct. 1399, 161 L.Ed.2d 193 (2005). "An 'unreasonable application' of Supreme Court

precedent occurs when 'the state court identifies the correct governing legal rule. . . but unreasonably applies it to the facts of the particular state prisoner's case'. . ." *Dixon v. Snyder,* 266 F.3d 693, 700 (7th Cir.2001) (quoting *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146
L.Ed.2d 389 (2000)).

*Muth v. Frank*, 412 F.3d 808, 813-14 (7th Cir. 2005).

In summarizing the law that relates to the failure to preserve exculpatory evidence over six paragraphs, the Court of Appeals apparently identified the correct governing legal rule. However, instead of applying the rule it had just identified, the Court of Appeals concludes in just one paragraph:

> To repeat, in his postconviction motion Nichols alleged that the State violated his right to due process by failing to preserve the list. It is not apparent from the record how Nichols would have known before trial that the list could not be located, in light of his trial counsel's failure to request it. But, as he found out postconviction, that turned out to be true. Regardless, his due process claim fails because, as we have already explained, the list lacked any exculpatory value.

Court of Appeals' Decision, R.5:Exh. 6:15 ¶45; App. 115. The Court of Appeals apparently adopts the reasoning from the preceding section on ineffective assistance, and creates a new category of evidence (that which "lacked any exculpatory value"), thus avoiding applying the federally required framework it had just laid out in the preceding paragraphs. In ignoring the applicable framework for review and creating a new characterization of evidence, the Court of Appeals decision is thus contrary to Federal law as determined by the Supreme Court, as the failure to apply the standard is necessarily an unreasonable application of it.

The U.S. Supreme Court has determined that in the context of failure to

preserve exculpatory evidence cases, evidence comes in just two varieties: "Apparently exculpatory," evidence of which the exculpatory value is apparent, and "potentially exculpatory," or evidence which is only potentially helpful, but may even be "much more likely to provide inculpatory than exculpatory evidence." *Cal. v. Trombetta*, 467 U.S. 479, 489, 104 S. Ct. 2528, 2534, 81 L.Ed.2d 413, 422 (1984)).

In briefing to the State courts, not even the State supposed that the evidence was anything other than "potentially exculpatory." *See* R.5:Exh. 3 (State's Brief-in-Chief); R.5:Exh. 5 (State's Reply Brief). The Court of Appeals, though, in observing "[i]t is not possible for the circuit court to know whether the list was apparently exculpatory without knowing the contents of the list" Court of Appeals' Decision, R.5:Exh. 6:5 ¶12; App. 105 (in the context of its ineffective assistance analysis) is undeterred itself in determining *de novo* that the list must have *lacked* any exculpatory value. R.5:Exh. 6:6 ¶15, App. 106. This is exactly contrary to well-established precedent that evidence "more likely to provide inculpatory than exculpatory" is properly characterized as "potentially exculpatory." *Trombetta* at 489.

To the extent that the Court of Appeals means to import its ideations from the ineffective assistance of counsel section of its decision, it is at best an "unreasonable application of clearly established Federal law." 28 U.S.C. § 2254

(d)(2). Having imagined at length that a jury could find the corrections to enhance a witness' credibility, it decided "any corrections in M.R.W's list would not have risen to the level of being exculpatory evidence." The controlling standard is not whether a reviewing court can imagine the jury regarding the evidence as enhancing a witness' credibility. The standard is whether the evidence was material. *Youngblood*. Evidence is material if it might be expected to play a significant role in the suspect's defense. *Youngblood* at 60, quoting *Trombetta*. The Court of Appeals makes no reference to any precedent as it imagines what impact the list might have had on the jury. As before, failure to apply clearly established Federal law is an unreasonable application of clearly established Federal law.

The circuit court thoroughly explained why the evidence was material. A trial court's determination of materiality is subject to the "clearly erroneous" standard of review. *State v. Shiffrs*, 175 Wis.2d 600, 605-606, 499 N.W.2d 719 (1993)(citing *State v. Turner*, 136 Wis.2d 333 (1987). The circuit court's determination that the unpreserved "written corrections possessed an exculpatory value that was material and apparent before the evidence was destroyed" is specifically addressed over the course of three pages of its written decision under "Exculpatory Nature," buttressed with citations to controlling precedent and citations to the record before it, from which it made its findings. Circuit Court Decision, R.5:Exh. 2, 21-24; App. 142-145.

To the extent that the Court of Appeals' ideations, contrary to the circuit court's well-founded factual findings, might be construed as "determinations of fact," they are unreasonable "in light of the evidence presented at in the State court proceeding," discussed more below.

The Court of Appeals' decision is contrary to federal law in that it decides the case differently than a materially factually indistinguishable case: That the evidence "lacked any exculpatory value" as opposed to being at least "potentially exculpatory." The Court of Appeals' decision is contrary to federal law in that it "incorrectly laid out governing Supreme Court precedent" by presuming to import ideations made under the "ineffective assistance" standards. The Court of Appeals decision is an unreasonable application of Federal law in that, having ostensibly identified the correct rule of law under the "Due Process" heading, it then failed to apply it. The court of Appeals decision thus variously is contrary to, and involves an unreasonable application of, Federal law as determined by the U.S. Supreme Court.

## II.    The Court of Appeals' Decision is based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

The State's position in briefing to the District Court was that the Wisconsin Court of Appeals made no findings of fact. R. 9 at 19. The District Court found that the Wisconsin Court of Appeals must have done so implicitly.

R. 15. The District Court's imputation of implicit findings to the Wisconsin Court of Appeals is too extravagant under habeas standards.

It bears emphasis that the statutory standard is whether a State court's decision is based on an unreasonable determination of facts *in light of the evidence presented in the State court proceeding*. 28 U.S.C. § 2554 (d)(2)(emphasis added). "If a state court's finding rests on thin air, the petitioner will have little difficulty satisfying the standards for relief under § 2554." *Mendiola v. Schomig*, 224 F.3d 589 (7th Cir. 2000).

> The statutory "unreasonableness" standard allows the state court's conclusion to stand if it is one of several equally plausible outcomes. On the other hand, Congress would not have used the word "unreasonable" if it really meant that federal courts were to defer in all cases to the state court's decision. ***Some decisions will be*** at such tension with governing U.S. Supreme Court precedents, or ***so inadequately supported by the record, or so arbitrary***, that a writ must issue.

*Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997)(emphasis added). The Court also may find a State court factual determination unreasonable where the State court failed to consider key aspects of the record. *See Miller-El*, 537 U.S. at 346-47.

While a State court finding of fact may be entitled to deference even absent a hearing, it must still be founded in evidence presented in the State court proceedings. The only evidence presented in a State court proceeding was presented to the circuit court. The Court of Appeals does not hold evidentiary proceedings.

The Court of Appeals determination of facts are unreasonable in light of the evidence presented at the State court proceedings in this case. We know this because of the lack of support for the Court of Appeals decision in the record—evidenced by the lack of citation to it—contrary to the circuit court's painstaking citations that demonstrate the circuit court findings constituted the great weight of credible evidence. The findings of the Court of Appeals are so inadequately supported by the record that they are unreasonable.

To the extent that the Court of Appeals ostensibly made findings of fact contrary to those certainly made by the circuit court, it did so contrary to Wisconsin law, which in itself may be a violation of due process. *Hicks v. Oklahoma*, 447 U.S. 343 (1980) (As one court characterized it: "The Supreme Court observed in *Hicks* that a failure to follow state law might implicate a criminal defendant's right to due process." *Boyce v. Soto*, Dist. Court, ND California 2017). Trial court determinations of fact, and inferences drawn from those facts, are entitled to "clearly erroneous" deference under Wisconsin law. *Cogswell v. Robershaw Controls Co.*, 274 NW 2d 647 (1979). Even when the circuit court does not make express findings, reviewing courts assume that the circuit court made implicit findings in a manner supporting its decision. *State v. Martwick*, 2000 WI 5, P31, 231 Wis. 2d 801, 604 N.W.2d 552. In *State v. Echols*, 175 Wis. 2d 653, 673, 499 N.W.2d 631 (1993), the Wisconsin Supreme Court

decided that absent an express finding by the circuit court, an appellate court may assume that the circuit court made implicit factual findings supporting its decision regarding the credibility of witnesses who provided testimony contrary to the court's decision. "The weight of the testimony and the credibility of the witnesses are matters peculiarly within the province of the [circuit] court acting as the trier of fact." *State v. Young*, 2009 WI App 22, P17, 316 Wis. 2d 114, 762 N.W.2d 736 (citation and quotation marks omitted). Accordingly, a reviewing court "will 'not reweigh the evidence or reassess the witnesses' credibility, but will search the record for evidence that supports findings the [circuit] court made, not for findings it could have made but did not." *Id*. (citation omitted); *see also Echols*, 175 Wis. 2d at 672. The Court of Appeals here did exactly the opposite.

While the Court of Appeals failure to adhere to Wisconsin law and "search the record for ways to sustain the circuit court's decision" might not in itself provide an independent ground for habeas due process relief, certainly Court of Appeals' failure to adhere to its own standards is clear and convincing evidence that its contrary findings of fact were unreasonable.

Put another way, if the record contained alternative grounds for plausible determinations of fact, the Court of Appeals should have cited them. Instead, they ignored them, pretended they didn't exist, and used an inappropriate standard of review in order to simply pretend at a different reality.

The only instance in which the Court of Appeals ostensibly made a finding of fact contrary to the circuit court's determination was regarding whether the exculpatory nature of the list was apparent to the interviewer. In that instance, the Court of Appeals watched a video of the interviewer, declared that it was employing *de novo* review because it had the video, and construed the actions of the interviewer to be innocent. Had the video really been the only evidence related to the circuit court's finding on the issue, such a determination could be fatal to the circuit court's conclusion on that issue alone. However, it wasn't the only evidence on that issue. Since the video wasn't the only evidence, the Court of Appeals' *de novo* review was inappropriate: By its own account, the standard is only appropriate when "the only evidence is video." Additionally, even if we were to subtract that individual finding of fact and substitute in the Court of Appeals perception of the interviewer's innocence on the video, we're still left with the other findings of fact that the circuit court cited to in making its determination that the evidence was apparent and that the interviewer acted in bad faith: The interviewer's affidavit, and her testimony before the court.

And that is the most defensible of the Court of Appeals' findings. In the face of most of the other circuit court findings, they are silent. In a particularly egregious instance, they simply pretended that the circuit court didn't make a finding:

"As to Nichols's assertion that the circuit court inferred that the exculpatory nature of the list was apparent to Detective Harris, Nichols is simply wrong." Court of Appeals' Decision at 13, ¶ 38, App. 113. It is noteworthy that even the State, in briefing to the District Court, conceded that the circuit court had found bad faith on part of the Detective. R.9 at 7 (Brief in Opposition by Respondent Lance Wiersma).

A plain reading of the circuit court's findings and decision belies the Court of Appeals' assertion:

> Detective Harris was the lead detective on M.R.W.'s case. Tr. 9/14/15 P.C. Hear. 60:5-8. She participated in the December 22, 2011 2nd interview of M.R.W. *Id.* at 61:18-20. She reviewed the 2nd Video. *Id.* at 61:7-11. She knew that M.R.W. had brought a document with her to that 2nd interview. *Id.* at 62:20-23. She knew that M.R.W.'s document contained multiple corrections relating to her 1st interview. *Id.* at 88:13-17. She knew that she was to include exculpatory information in her police reports. *Id.* at 80:15-22. Yet, in her police report of the 2nd interview, Detective Harris wrote:
>
>> [M.R.W.] stated that she did watch the video of her and Holzrichter's interview and that what she said in the interview was true <u>with one correction.</u>
>
> *Id.* at 87:23-88:6 (emphasis added); 9/14/15 P.C. Exh. 18. The one correction referenced in Detective Harris' report was the exclusive correction actually addressed in the 2nd interview, i.e., Defendant never suggested that M.R.W. take off her clothing. Tr. 9/14/15 P.C. Hear. 84:14-20. *Detective Harris understood that a correction of that type was significant. Id.* at 99:23-100:10. Nonetheless, she never received a copy of M.R.W.'s written corrections. *Id.* at 63:10-14. She never requested a copy of those written corrections. *Id.* at 97:22-23. Prior to Defendant's filing of this postconviction motion, she had never even followed up with anyone from Kansas about M.R.W.'s document. *Id.* at 63:21-24. Consequently, the defense has never been provided with a copy of M.R.W.'s written corrections.
>
> Since Defendant's filing of this postconviction motion, Detective Harris has made efforts to determine if the document still exists and, if so, where it is located. *Id.* at 65:4-11. Her investigation has exhausted the possible people with whom, and places where, the document could exist. *See Id.* at 65:12-67:20.

Decision and Order of the Circuit Court R.5:Exh. 2:20-21; App. 141-142

(underscored emphasis in original, italicized emphasis added).

> *Detective Harris acknowledged the significance of the one correction M.R.W. was allowed to discuss.* Tr. 9/14/15 P.C. Hear. 99:23-100:10. At the same time, she maintained that she had not found M.R.W.'s written list of corrections significant at the time. *Id.* at 64:15-21. Detective Harris' acknowledgment of the one correction's significance, her apparent discomfort on the postconviction witness stand, her pauses to search for an answer in postconviction examination, and her erroneous description of M.R.W.'s written corrections in her police report leaves this Court incredulous. *This Court finds incredible Detective Harris' testimony regarding her perception of M.R.W.'s written corrections as insignificant.* Therefore, this Court accords it no weight.

*Id.* at 24; App. 145 (italicized emphasis added).

> As discussed *supra* at III., B., 2, Detective Harris was the lead case detective and participated by phone in the 2nd interview. She also reviewed the 2nd Video. She knew, at the time, that M.R.W. had brought a written list of corrections to the 2nd interview. She knew, at the time, that M.R.W. was allowed to divulge only one of her multiple corrections.
>
> Detective Harris also knew that her police reports were to include any exculpatory information. She knew those reports would be handed over to the defense during discovery. Yet, in her police report describing the 2nd interview, she wrote:
>
> > [M.R.W.] stated that she did watch the video of her and Holzrichter's interview and that what she said in the interview was true <u>with one correction.</u>
>
> *Id.* at 87:23-88:6 (emphasis added); 9/14/15 P.C. Exh. 18. To believe that Detective Harris' police report coincidentally erred in describing the coincidentally unpreserved evidence is simply unbelievable. Detective Harris' erroneous police report misled the defense and demonstrates bad faith.

*Id.* at 26; App. 147 (underscored emphasis in original).

Clearly, our assertion that the circuit court found that the exculpatory value of the unpreserved evidence was apparent to Det. Harris was not "simply wrong," but found in the circuit court's written decision, with painstaking detail by the circuit court with pinpoint cites to the record after nearly every sentence.

The written factual determinations of the circuit court with citations to the

record and thoroughly explained rationale taken together are so overwhelming that they can lead only to the conclusion that a reasonable jurist could not disagree.

Again, conjecture about the effect of evidence on the jury is not a factual finding, and therefore isn't entitled to any deference. Conversely, the circuit court's observation that the defense "could chip, indeed chop" at the credibility is the sort of objective assessment of what defense counsel would possibly do with evidence is exactly what is required. The standard is not what effect the evidence might have on a jury, but materiality: That the evidence might be expected to play a significant role in a suspect's defense.

While this Court is statutorily obligated to defer to a State court's findings of fact—in this case, the Wisconsin Court of Appeals—there are few instances that could remotely be characterized as a finding of fact. Its review of the video *de novo* was inappropriate in divorcing it from the other facts which gave the finding context, and its decision about the video is not fatal to any of the circuit court's determinations in any event. The Court of Appeals ideations do not amount to findings of fact, and are not entitled to deference. The Court of Appeals determination rests on thin air: It is so inadequately supported by the record as to be objectively unreasonable.

The circuit court in this case did its job. The Court of Appeals did not. The

Court of Appeals decision is an unreasonable determination of facts based on the evidence presented at State court proceedings.

### III. The State's failure to preserve exculpatory evidence was not harmless error:

By definition, it could not be. Whether the unpreserved evidence is apparently exculpatory or merely potentially exculpatory, it is necessarily material. When a determination of materiality has been made, whether error was harmless need not be addressed. *Kyles v. Witley*, 514 U.S. 419, 435-436 (1995). To the extent that harmless error analysis would apply, the circuit court, having presided over the trial, was clear that its confidence was shaken. Circuit Court Decision, December 1, 2015, R.5:Exh.2:23; App. 144.

### IV. The issue of ineffective assistance of counsel was not waived by the petitioner's asserted failure to include it in a petition for review to the Wisconsin Supreme Court.

The issue of whether counsel was ineffective for failing to notice or object to the above is likely, as the circuit court noted, rendered moot by a decision on the issue above. While the District Court found the issue procedurally defaulted for failure to raise it in the petition to the Wisconsin Supreme Court, it was not.

When the Wisconsin Supreme Court accepts review of a case, it brings all subsidiary issues with it. Contrary to the unique framing of the Court of Appeals, the due process claim was not subsidiary to the ineffective assistance claim. As presented by defense counsel in the original postconviction motion, they were

separate. As found by the circuit court, the ineffective assistance was subsidiary to the due process violation. Because the circuit court only found ineffective assistance in trial counsel's failure to address the failure to preserve evidence, ineffective assistance was contingent on due process, not vice versa. The due process violation provides for a dismissal of the charges, whereas ineffective assistance provides only for a new trial. The Wisconsin Supreme Court is not an error correcting court, and "error correction" is not one of the criteria enumerated in Wisconsin's statutes as justifying a petition for review. Rather, a petition for review is aimed at framing issues in ways that the Wisconsin Supreme Court, as a law developing court, may want to address. It is therefore common to accent the novel, and only the novel, aspects of a case in a petition for review. Once a case is accepted, all subsidiary issues are accepted with it.

While the issue of ineffective assistance may be rendered moot, as the circuit court observed, by a decision on the failure to preserve exculpatory evidence issue, it was nonetheless encompassed in the circuit court's decision and, given the Wisconsin Court of Appeals conflating of the issues, addressing ineffective assistance will help to clarify any decision in this case.

## CONCLUSION

For these reasons, Mr. Nichols respectfully asks that the Court issue the requested writ of habeas corpus to have him brought before it to the end that he may be discharged from his unconstitutional confinement and restraint.

Dated at Madison, Wisconsin, July 3, 2023.

Respectfully submitted,

KARL W. NICHOLS,
   Petitioner-Appellant

STROUD, WILLINK & HOWARD
Attorneys for the Petitioner-Appellant
33 East Main Street, Suite 610
Madison, Wisconsin 53701-2236
(608) 661-1054

BY:    s/ ANTHONY J. JUREK
       ANTHONY J. JUREK
       State Bar No. 1074255

## RULE 32(a)(7) CERTIFICATION

I hereby certify that this brief complies with the type volume limitations contained in Fed. R. App. P. 32(a)(7) for a principal brief produced with a proportionally-spaced font. The length of the includable portions of this brief, see Fed. R. App. P. 32(a)(7)(B)(iii), is 8,556 words as determined using the word count of the Microsoft Word program used to prepare the brief.

**TABLE OF CONTENTS TO APPELLANT'S APPENDIX**

Items bound with brief:

| Record No. | Description | Page |
|---|---|---|
| R16 | Judgment (10/17/2022) | 1 |
| R15 | Opinion and Order denying Writ for Habeas Corpus | 2 |

Items bound in separate appendix:

| Record No. | Description | Page |
|---|---|---|
| R. 5:Exh.2 | Wisconsin Court of Appeals Decision | 101 |
| R. 5:Exh.6 | Circuit Court Decision | 122 |

## CIRCUIT RULE 30(c) STATEMENT

The items required by Circuit Rule 30(a) have been bound with appellant's brief. Those items required by Circuit Rule 30(b) are contained in the separate appendix.


                                 __s/ ANTHONY J. JUREK_____
                                 ANTHONY J. JUREK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KARL W. NICHOLS,

      Petitioner,

                                    Case No.   18-cv-829-wmc

  v.

LANCE WIERSMA, Administrator,
Wisconsin Department of Corrections,
Division of Community Corrections,

      Respondent.

---

JUDGMENT IN A CIVIL CASE

---

      IT IS ORDERED AND ADJUDGED that judgment is entered in favor of

respondent Lance Wiersma, Administrator, Wisconsin Department of Corrections,

Division of Community Corrections, and against petitioner Karl W. Nichols denying

the petition for a writ of habeas corpus.

| | |
|---|---|
| /s/ | 10/17/22 |
| Joel Turner, Clerk of Court | Date |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KARL W. NICHOLS,

                         Petitioner,

    v.

LANCE WIERSMA, Administrator,
Wisconsin Department of Corrections,
Division of Community Corrections,

                         Respondent.

OPINION and ORDER

18-cv-829-wmc

Petitioner Karl W. Nichols, who is represented by counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2014 conviction by a Dane County, Wisconsin, jury for one count of first-degree sexual assault of a child. Nichols contends that the conviction should be vacated because: (1) the state breached its duty to preserve potentially exculpatory evidence (specifically, a written list that the victim prepared, which identified changes to statements she had made during her first forensic interview); and (2) his trial counsel failed to address the breach before trial. As explained below, Nichols' petition must be denied because he failed to establish that in rejecting his claims and affirming his conviction, the Wisconsin Court of Appeals (1) unreasonably applied clearly established federal law or (2) based its decision on an unreasonable interpretation of the facts.

BACKGROUND[1]

## A. Criminal conviction for sexual assault of a minor

In Dane County Case No. 2012CF412, Nichols was charged with first-degree sexual assault of a child.  The underlying facts accused Nichols of sexually assaulting a four-year old child, M.R.W., on one occasion between September 15 and October 31, 2005, while M.R.W. was staying at his house in Madison, Wisconsin.  Unfortunately, M.R.W. did not report the sexual assault until 2011, when she was 10 years old and living in Kansas.  After M.R.W. told her mother about the incident, however, she contacted law enforcement authorities in Kansas, who arranged for M.R.W. to meet twice with a forensic interviewer at a local child advocacy center.

During the first of these interviews, M.R.W. explained that she had spent a lot of time at Nichols's house between the ages of four and seven, playing with his son.  She also described several sleepovers at his house, during which Nichols's son and she would stay up late.  She further stated that Nichols told her to tell her mother that they had gone to bed at 10:00 p.m., despite having actually gone to bed much later.  Among the activities that M.R.W. described at these sleep overs was Nichols's son and she "played" wrestling and attacking Nichols, often with little or no clothing, taking off her clothes when she got hot, and Nichols even encouraging her to do so.  On one occasion, Nichols even gave her a sponge bath in a basement utility sink after she had been playing with stamps.

As for the specific incident of sexual assault charged, M.R.W. reported that during one sleepover when she could not sleep, she went upstairs and sat with Nichols on a chair.

---

[1] The following facts are taken from Nichols' petition or the state court records provided by Nichols and the state.

According to M.R.W., Nichols told her that he wondered what it was like to have a vagina because he did not have one, and he asked if he could touch hers.  M.R.W. did not object because she did not think there was anything wrong with it at the time, and Nichols then touched her inside and outside of her vagina with his hands.  M.R.W. told the forensic interviewer that the touching happened only once, and that it was difficult to remember how she had felt at the time.

This first recorded interview was provided to the Madison Police Department and Dane County District Attorney's office.  That office then asked that a second forensic interview be conducted, so that an MPD detective could participate and M.R.W. could be placed under oath.  The second interview was conducted approximately three months after the first one by the same forensic interviewer in Kansas, except this time with an MPD detective participating by phone from Madison.  M.R.W. again described her sleepovers at Nichols's house, the sponge bath incident, and the sexual touching incident.  She provided a few more details about the touching incident, describing the chair she sat in with Nichols and the pajamas she was wearing. She also reported that it was the only time Nichols had touched her vagina.

Near the end of the second interview, M.R.W. confirmed that everything she had said was true "as far as [she could] remember."  (Dkt. #5-10, at 41.)  She also affirmed that everything she had said was "the truth and nothing but the truth."  (*Id.*)  The interviewer asked M.R.W. twice whether she had any questions, and each time M.R.W. answered, "No."  (*Id.* at 41, 45.)  The interviewer then acknowledged that M.R.W. had brought a notebook with her, and she asked M.R.W. whether she had written some things down that she was wondering about.  M.R.W. responded that she had written "some things down that I think I, I changed

from the last interview.  I think that [Nichols] didn't suggest that I would take my clothes off.
I think I took them off and he didn't object." (*Id.* at 46.)

The interviewer responded that M.R.W. had told her the same thing in the beginning
of the first interview, then asked whether M.R.W. felt like it was her fault that she had not
objected "to any of this." (*Id.*) M.R.W. answered that she had felt like that but felt better after
talking to a therapist.  The interviewer responded that she was glad M.R.W. felt better, and
she suggested that they say goodbye to the detective and find something to drink.  As M.R.W.
followed the interviewer, she apparently also raised her pad of paper and asked, "First can I tell
you, um, the rest of this?" (*Id.*)  The interviewer responded, "Sure.  We can do that, and then
I'm going to take a copy of it so that [the counselor and detective] can have it, too." (*Id.*)  The
recording of the video portion of the second interview concluded at that point.

Approximately three months after the second forensic interview, the Dane County
District Attorney's Office filed a criminal complaint charging Nichols with first-degree sexual
assault of a child based on M.R.W.'s statements about the touching incident.  Nichols pleaded
not guilty to the charge and the case proceeded to a three-day jury trial in November 2013.  At
trial, the state called as witnesses:  M.R.W., her parents, an MPD detective, and two mutual
acquaintances of M.R.W.'s and the Nichols's families.  The state also introduced the videos
and transcripts of the two forensic interviews.  The only witness called by Nichols was a former
neighbor, who testified that she never observed M.R.W. sleep at the Nichols' house during the
relevant time period.  Ultimately, the jury found Nichols guilty of the charged offense, and he
was sentenced to five years of probation.

**B. Postconviction proceedings in circuit court**

Nichols filed a postconviction motion contending, among other things, that the state failed to preserve and disclose exculpatory evidence -- specifically, M.R.W.'s written list of "changes" from the first forensic interview that she brought with her to the second.  The circuit court then held a two-day, post-conviction evidentiary hearing, at which both the forensic interviewer and MPD detective testified.  The interviewer testified that she had no specific recollection of what was included in M.R.W.'s list, but thought it was list of things M.R.W. had discussed with her therapist or that she had testified to during the second interview already. (Dkt. #5-27, at 92–94.)  The interviewer also testified that if she had felt something on the list needed correcting, she would have addressed it on the record.  (*Id.* at 110.)  The interviewer further stated that after the second interview, M.R.W. had handed her the list, although she could not remember specifically what she did with the list.  The interviewer testified that she would not have retained the list (or any other evidence provided by an interviewee like M.R.W.); instead, she described her normal practice, and what she assumed she did in this case, which was to give such information to a worker from the Department of Children and Families, who, in turn, would send it to law enforcement.

The MPD detective who was present for the second forensic interview also testified at the post-conviction hearing, stating that she was aware M.R.W. had brought a written document with her to the interview, but that she never received a copy of any list and did not follow up with anyone in Kansas regarding the list.  (Dkt. #5-29, at 63.)  The detective testified that she did not think the list was significant at the time, because she thought that everything in the document had been discussed during the interview already (*id.* at 64), and because she assumed that if something was significant, the forensic interviewer would have explored the

issue further.  (Dkt. #5-29, at 99.)  After Nichols' postconviction counsel requested the list, the detective attempted to retrieve it from several people in Kansas, but without success.  (*Id.* at 65–66.)

In a lengthy and detailed decision, the circuit court found that the state's failure to preserve the list violated Nichols' right to due process.  (Dkt. #5-2.)  The court reasoned that the state's case against Nichols depended entirely on M.R.W.'s credibility, and defense counsel could have used the list to discredit M.R.W.'s memory, honesty and motives.  In addition, the court found that the state acted in bad faith by failing to preserve the list once made aware of it, and thereby shirked its constitutional duty to seek and preserve evidence despite reminders and orders from the court to do so.

The circuit court further found that the forensic interviewer acted in bad faith by "obvious[ly] attempt[ing] to conceal M.R.W.'s written corrections."  (*Id.* at 26.)  Indeed, the circuit court found that the interviewer had immediately recognized the exculpatory nature of the list and hurried to terminate the interview before additional changes could be disclosed.  (*Id.* at 23–24.)  Similarly, the court found that the MPD detective had recognized the significance of the list and had acted in bad faith by intentionally mischaracterizing and minimizing it in her police report.  (*Id.* at 26.)  Finally, the court concluded that the defendant could not have obtained comparable evidence by any reasonably available means, and the only proper remedy for this misconduct was to vacate the judgment of conviction and dismiss the case with prejudice.

**C.  The Wisconsin Court of Appeals' decision**

The state appealed the circuit court's decision, and the Wisconsin Court of Appeals reversed, concluding that the circuit court should have rejected Nichols' ineffective assistance and due process arguments because Nichols had failed to show that M.R.W.'s list had any exculpatory value.  Nichols then appealed, but the Wisconsin Supreme Court denied his petition for review.  He filed his habeas petition in this court in October of 2018.

ANALYSIS

Petitioner Nichols contends that his conviction should be vacated because: (1) the state violated his due process rights by failing to preserve the list created by M.R.W. identifying changes to statements made after her first forensic interview; and (2) his trial counsel was ineffective by failing to challenge the state's due process violation before trial.  As a preliminary matter, Nichols' ineffective assistance of counsel claim is procedurally defaulted because he failed to include it in the petition for review submitted to the Wisconsin Supreme Court, *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999), and Nichols' argument that his due process claim encompassed his ineffective assistance claim is neither persuasive nor supported by any citation to legal authority.  *See Sweeney v. Carter*, 361 F.3d 327, 332–33 (7th Cir. 2004) (petitioner must present operative facts and legal principles to each level of state court review).  Moreover, even if Nichols' ineffective assistance claim was not procedurally defaulted, it would fail on the merits since it is premised on a due process claim that fails for the reasons discussed below.  Accordingly, the court need not address Nichols' ineffective assistance claim further in this opinion.

As for the remainder of his habeas petition, Nichols must show that he is in custody in violation of the Constitution, laws or treaties of the United States.[2]   28 U.S.C. § 2254(a). Because the Wisconsin Court of Appeals addressed the merits of Nichols' due process and ineffective assistance of counsel claims, this court's review is subject to a particularly deferential standard of review under 28 U.S.C. § 2254(d)(1).  Under § 2254(d)(1), Nichols is not entitled to relief unless he shows that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  A decision is contrary to clearly established federal law "if the rule the decision applies differs from governing law set forth in Supreme Court cases."  *Bailey v. Lemke*, 735 F.3d 945, 949–50 (7th Cir. 2013) (citations omitted).  A decision involves an unreasonable application of Supreme Court precedent "if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case."  *Id.*

Alternatively, Nichols can obtain relief if he shows that the state court's adjudication of his claims was based upon an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(2).  Again, however, the federal court owes deference to the state court, especially the underlying state court findings of fact and credibility determinations against a petitioner, which are all presumed correct unless the petitioner comes forth with clear

---

[2] The "in custody" requirement of 28 U.S.C. § 2254 applies only "at the time the petition was filed."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  Although Nichols completed his five-year probation sentence while his habeas petition was pending, Nichols satisfies this requirement because he filed his petition before his sentence was complete.  In addition, his petition is not moot because he remains subject to ongoing collateral consequences of his conviction, in particular having to register as a sex offender.  *See id.* (ongoing "collateral consequences" of conviction satisfy constitutional case or controversy requirement even if petitioner's sentence has expired).

and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014); *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013).

Here, Nichols argues that the state violated his Fourteenth Amendment due process rights by failing to preserve and provide the written list that M.R.W. brought to her second forensic interview.  The Constitution requires the government to preserve and disclose evidence that "might be expected to play a significant role in the suspect's defense."  *California v. Trombetta*, 467 U.S. 479, 489 (1984).  This means that the state must preserve and disclose "material" evidence.  *Jones v. York*, 34 F.4th 550, 561 (7th Cir. 2022).  Evidence is "material" if there is a "reasonable probability" that if disclosed, "the result of the proceeding would have been different."  *Id.*   However, the Constitution does not impose on the state "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution."  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  If evidence is only potentially useful, the state does not violate due process unless: (1) the exculpatory nature of the evidence was apparent before its destruction; (2) the government acted in bad faith by failing to preserve the evidence; and (3) the defendant could not obtain the same evidence anywhere else.  *Jones*, 34 F.4th at 558–59; *Tabb v. Christianson*, 855 F.3d 757, 767 (7th Cir. 2017); *United States v. Fletcher*, 634 F.3d 395, 407 (7th Cir. 2011).

Thus, in *Trombetta*, the Supreme Court rejected a due process challenge based on the state's failure to preserve results of a breath test because the chances were "extremely low" that the evidence would have been exculpatory.  467 U.S. at 489.  Similarly, in *Youngblood*, the Supreme Court held that the state's failure to preserve DNA samples did not violate the petitioner's due process rights because: (1) the evidence was only potentially exculpatory; and (2) there was no showing of bad faith.  488 U.S. at 55, 58–59.

In evaluating Nichols' due process claim, the Wisconsin Court of Appeals applied the correct federal legal standards, relying the Supreme Court's decisions in *Trombetta* and *Youngblood*, as well as Wisconsin state court cases applying those decisions.  (Dkt. #5-6, at 14.)  The court went on to conclude that Nichols' claim failed because he had not shown that M.R.W.'s list had any exculpatory value.  (*Id.* at 15.)  In particular, it noted that neither Nichols nor the circuit court in its decision suggested "that the list was exculpatory because the list may have corrected some fact in M.R.W.'s initial interview in a manner supporting the view that the sexual touching did not happen."  (*Id.* at 10–11.)  Thus, regardless the contents of the list, the court found it would not undermine M.R.W.'s consistent testimony about the sexual touching incident that provided the basis for both the charge and conviction obtained against Nichols.

The court of appeals also flatly rejected the argument that the state was required to preserve the list due to its potential impeachment value.  Instead, the court found that the list "would have enhanced, not impeached, M.R.W.'s credibility."  (*Id.* at 11.)  Specifically, "[t]he only reasonable inference from the facts—that M.R.W. had reviewed the first interview before participating in the second interview, and that she had a list of changes to make of some things she said in the first interview—is that she spoke accurately, truthfully, and consistently with her corrections, in the second interview."  (*Id.*)  For these reasons, the court of appeals concluded Nichols had failed to demonstrate that "whatever else was on the list would tend to, or lead to evidence that would tend to, establish Nichols's innocence."  (*Id.* at 12.)

Although the court of appeals might have given greater deference to the circuit court's credibility determinations and superior view of the facts at the original criminal trial, its decision was a reasonable application of *Trombetta* and *Youngblood*, which is as far as a federal

10

court can inquire as part of a habeas review.  In particular, since M.R.W.'s list no longer exists, neither Nichols, nor the state nor the state courts know what was on the list, and the "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976).  Here, the court of appeals further concluded that the list was not material and would not have changed the outcome of the trial because M.R.W.'s testimony regarding the fundamental issue in the case -- whether Nichols sexually assaulted her -- was consistent during both forensic interviews and at trial.  This is enough to meet this court's deferential review standard.

At most, Nichols' counsel might have used the list to impeach M.R.W.'s memory of certain events, but the court of appeals was permitted to find as speculative the circuit court's assertion that the list would have been "devastating" to M.R.W.'s credibility.  (Dkt. #5-6, at 12).  Regardless, M.R.W.'s list was plainly the sort of "potentially useful evidence" referred to in *Trombetta* and *Youngblood*, not material, exculpatory evidence that the state was mandated to preserve.  This means that Nichols could establish a due process violation only by showing that the state acted in bad faith by failing to preserve it, and as the court of appeals found, at least implicitly, the evidence did not support the circuit court's finding of bad faith.  Among other things, the court of appeals reviewed the video footage of M.R.W.'s second forensic interview and rejected as speculative the circuit court's finding that both the forensic interviewer and detective believed the list to be exculpatory.  Contrary to the circuit court's findings, the court of appeals also noted that the interviewer was patient, gave M.R.W. several opportunities to ask questions, and responded empathetically when M.R.W. discussed her list.  (Dkt. #5-6, at 13.)  Whether this court would have deferred to the circuit court's findings or not, the court

11

of appeals' conclusion neither falls "well outside the bounds of permissible difference of opinion" nor is contrary to "the clear and convincing weight of the evidence" that is required to support habeas relief.  *Morgan v. Hardy*, 662 F.3d 790, 800–01 (7th Cir. 2011).

Moreover, bad faith requires more than carelessness; it requires a "conscious effort to suppress exculpatory evidence."  *United States v. Chaparro–Alcantara*, 226 F.3d 616, 624 (7th Cir. 2000) (citation omitted); *see also Youngblood*, 488 U.S. at 57–58 ("Mere negligence by police absent a showing of bad faith does not constitute a constitutional violation.").  Nichols presents no evidence of such an effort by the interviewer, MPD detective or the state; instead, at most, the evidence shows the interviewer and detective were careless in failing to preserve M.R.W.'s list or inquire further because they did not deem the list significant.

Ultimately, therefore, petitioner has not identified any basis on which this court could conclude that the Wisconsin Court of Appeals' rejection of Nichols' due process or ineffective assistance claims were based on an unreasonable application of clearly established federal law or fell "well outside" the boundaries of permissible differences of opinion.  *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (federal court cannot grant habeas relief unless state court decision was "'unreasonable,' which means something like lying well outside the boundaries of permissible differences of opinion").

As a result, the only remaining question on habeas review is whether to grant Nichols a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner.  To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).  Here, Nichols has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court.  Because this court finds that no reasonable jurists would debate whether the Wisconsin Court of Appeals' decision unreasonably applied clearly established federal law, or based its decision on an unreasonable interpretation of the facts, the court will not issue petitioner a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Petitioner Karl Nichols's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED.

2. Nichols is DENIED a certificate of appealability.

Entered this 17th day of October, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge