No. 22-3059

_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

KARL W. NICHOLS,

      Petitioner-Appellant,

   v.

LANCE WIERSMA,

      Respondent-Appellee.

APPEAL FROM AN ORDER DENYING A PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 ENTERED IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN, THE HONORABLE WILLIAM M. CONLEY, PRESIDING

## BRIEF OF THE RESPONDENT-APPELLEE

JOSHUA L. KAUL
Attorney General of Wisconsin

LISA E.F. KUMFER*
Assistant Attorney General
State Bar #1099788

Attorneys for Respondent-Appellee

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2796
(608) 294-2907 (Fax)
kumferle@doj.state.wi.us

*Counsel of Record

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUES .........................................................1

STATEMENT OF THE CASE ............................................................2

SUMMARY OF THE ARGUMENT ................................................. 12

STANDARD OF REVIEW ............................................................... 14

ARGUMENT ................................................................................... 15

    I.    The Wisconsin Court of Appeals' rejection of Nichols's
    due process claim does not meet any of the standards
    for relief under 28 U.S.C. § 2254.................................... 15

        A.    AEDPA requires a heavy measure of deference
        to be afforded to state courts' decisions on the
        merits of a federal constitutional claim. ............................ 15

        B.    The district court properly determined that the
        Wisconsin Court of Appeals' decision did not
        rest on an unreasonable determination of the
        facts.................................................................... 17

        C.    The Wisconsin Court of Appeals reasonably
        found that the list was not apparently
        exculpatory and reasonably applied
        *Youngblood* when rejecting this claim. ............................... 25

        D.    If any error occurred in the Wisconsin courts, it
        was harmless. ...................................................... 31

    II.    Nichols procedurally defaulted his ineffective
    assistance of counsel claim by failing to exhaust it in
    the Wisconsin courts, and has failed to show that the
    default should be excused............................................ 33

CONCLUSION................................................................................ 36

# TABLE OF AUTHORITIES

## Cases

*Aleman v. Sternes,*
   320 F.3d 687 (7th Cir. 2003) .................................................................. 31, 32

*Arizona v. Youngblood,*
   488 U.S. 51 (1988) ....................................................................... 1, 12, 25

*Armstrong v. Young,*
   34 F.3d 421 (7th Cir. 1994) ........................................................................ 19

*Avila v. Richardson,*
   751 F.3d 534 (7th Cir. 2014) ..................................................................... 16

*Bailey v. Lemke,*
   735 F.3d 945 (7th Cir. 2013) ................................................................. 16, 17

*Baldwin v. Reese,*
   541 U.S. 27 (2004) .................................................................................. 35

*Barrow v. Uchtman,*
   398 F.3d 597 (7th Cir. 2005) ................................................................ 17, 24

*Brecht v. Abrahamson,*
   507 U.S. 619 (1993) ................................................................................ 32

*Brown v. Payton,*
   544 U.S. 133 (2005) ........................................................................... 15, 16

*Burt v. Titlow,*
   571 U.S. 12 (2013) .................................................................................. 17

*California v. Trombetta,*
   467 U.S. 479 (1984) ............................................................... 10, 12, 25, 30

*Campana Corp. v. Harrison,*
   114 F.2d 400 (7th Cir. 1940) ..................................................................... 22

*Campbell v. Smith,*
   770 F.3d 540 (7th Cir. 2014) ..................................................................... 16

*Cullen v. Pinholster,*
   563 U.S. 170 (2011) ................................................................................ 15

*Dassey v. Dittmann,*
   877 F.3d 297 (7th Cir. 2017) ..................................................................... 17

Page

*Duncan v. State of Wis. Dept. Health & Fam. Serv.'s,*
   166 F.3d 930 (7th Cir. 1999) ........................................................ 35

*Emer's Camper Corral, LLC v. Alderman,*
   2020 WI 46, 391 Wis. 2d 674, 943 N.W.2d 513 ............................... 34

*Engle v. Isaac,*
   456 U.S. 107 (1982) ...................................................................... 14

*Friends of Frame Park, U.A. v. City of Waukesha,*
   2022 WI 57, 403 Wis. 2d 1, 976 N.W.2d 263 ................................. 14

*Gomez v. Jaimet,*
   350 F.3d 673 (7th Cir. 2003) ........................................................ 34

*Hall v. Zenk,*
   692 F.3d 793 (7th Cir. 2012) ........................................................ 32

*Harrington v. Richter,*
   562 U.S. 86 (2011) ....................................................................... 16

*Hubanks v. Frank,*
   392 F.3d 926 (7th Cir. 2004) ........................................................ 25

*McCarthy v. Pollard,*
   656 F.3d 478 (7th Cir. 2011) ........................................................ 26

*Merco Distributing Corp. v. Commercial Police Alarm Co., Inc.,*
   84 Wis. 2d 455, 267 N.W.2d 652 (1978) ........................................ 23

*Moore v. Casperson,*
   345 F.3d 474 (7th Cir. 2003) ........................................................ 33

*Morgan v. Hardy,*
   662 F.3d 790 (7th Cir. 2011) ........................................................ 18

*Murray v. Carrier,*
   477 U.S. 478 (1986) ...................................................................... 14

*Nevada v. Jackson,*
   569 U.S. 505 (2013) ...................................................................... 16

*O'Sullivan v. Boerckel,*
   526 U.S. 838 (1999) ................................................................. 14, 33

*Royster-Clark, Inc., v. Olsen's Mill, Inc.,*
   2006 WI 46, 290 Wis. 2d 264, 714 N.W.2d 530 ............................. 22

*State v. Greenwold,*
189 Wis. 2d 59, 525 N.W.2d 294 (Ct. App. 1994).........................................26

*State v. Huggett,*
2010 WI App 69, 324 Wis. 2d 786, 783 N.W.2d 675 ....................................26

*State v. Jimmie R.R.,*
2000 WI App 5, 232 Wis. 2d 138, 606 N.W.2d 196 (Ct. App. 1999)............21

*State v. Munford,*
2010 WI App 168, 330 Wis. 2d 575, 794 N.W.2d 264 ..................................26

*State v. Witkowski,*
163 Wis. 2d 985, 473 N.W.2d 512 (Ct. App. 1991)......................................33

*State v. Young,*
2009 WI App 22, 316 Wis. 2d 114, 762 N.W.2d 736.....................................23

*Stern v. Meisner,*
812 F.3d 606 (7th Cir. 2016) ...................................................................14, 15

*Strickland v. Washington,*
466 U.S. 668 (1984) ...................................................................................... 2

*Sturgeon v. Chandler,*
552 F.3d 604 (7th Cir. 2009) ........................................................................35

*Swarthout v. Cooke,*
562 U.S. 216 (2011) ......................................................................................24

*Wainwright v. Goode,*
464 U.S. 78 (1983) ........................................................................................18

*Wainwright v. Sykes,*
433 U.S. 72 (1977) ........................................................................................14

*Williams v. Taylor,*
529 U.S. 362 (2000) ................................................................................16, 29

*Woodford v. Visciotti,*
537 U.S. 19 (2002) ...................................................................................15, 29

**Statutes**

28 U.S.C. § 2254................................................................................9, 12, 15

28 U.S.C. § 2254(a) ......................................................................................31

28 U.S.C. § 2254(d)(1) ..................................................................................15

Page

28 U.S.C. § 2254(d)(2) ......................................................... 16

28 U.S.C. § 2254(e)(1) ......................................................... 17

## JURISDICTIONAL STATEMENT

Petitioner-Appellant Karl W. Nichols's jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUES

In an order dated June 1, 2023, this Court granted Petitioner-Appellant Karl W. Nichols's motion for a certificate of appealability on two issues: "whether the state violated the Constitution by failing to turn over before or during trial a written list of corrections that a child witness had made regarding her statements at a forensic assault interview; and whether any procedural default with respect to that issue is excused by ineffective assistance of counsel." (7th Dkt. 7:1.) However, Nichols failed to raise his ineffective assistance of counsel claim in his petition for review to the Wisconsin Supreme Court. (Dkt. 15:7; 5-7.) The State[1] thus frames the issues as follows:

1. Did the Wisconsin courts act contrary to or unreasonably apply *Arizona v. Youngblood*, 488 U.S. 51 (1988), in rejecting Nichols's due process claim because the list lacked exculpatory value, or was the decision based upon an unreasonable determination of the facts?

---

[1] For consistency with the party designations in the relevant documents and given that the State of Wisconsin is the real party in interest in this proceeding, Respondent-Appellee Lance Wiersma is referred to as "the State" throughout this brief.

2.  Is Nichols's ineffective assistance of counsel claim, premised on trial counsel's failure to demand that the State produce the list, procedurally defaulted by Nichols's failure to exhaust it in the state courts, and, if so, is the default excused?

3.  If this Court reaches Nichols's ineffective assistance of counsel claim, did the Wisconsin Court of Appeals act contrary to or unreasonably apply *Strickland v. Washington*, 466 U.S. 668 (1984), when rejecting it?

## STATEMENT OF THE CASE

M.R.W.'s and Nichols's family belonged to "a childcare cooperative formed with other families in Madison." (Dkt. 5-6:3.) M.R.W. and Nichols's oldest son were similar in age, and M.R.W. would go to play dates at Nichols's house from the time she was three years old until she moved to Kansas with her family. (Dkt. 5-6:3.) After moving to Kansas, M.R.W. told her mother that Nichols had touched her vagina during a sleepover "at Nichols's house when they lived in Madison" ("the touching incident"). (Dkt. 5-6:3.)

On September 26, 2011, M.R.W. "was interviewed by Jane Holzrichter, the director of the Child Advocacy Center at Horizons Mental Health Center in Hutchinson, Kansas." (Dkt. 5-3:7; 5-9:1.) M.R.W. was ten years old at the time. (Dkt. 5-3:10; 5-9:5.) In a videotaped interview, she told Holzrichter that she would have sleepovers at Nichols's house and she and Nichols's son "would wrestle with Nichols while they were wearing little or no clothing." (Dkt. 5-

3:10; 5-9:14.) She said she would take her clothes off because she was hot and that Nichols encouraged her to do so. (Dkt. 5-3:10; 5-9:15.)

M.R.W. recounted one time when she was four or five years old "when Nichols felt around the inside and outside of her vagina with his hands." (Dkt. 5-3:10; 5-9:20–23.) During a sleepover, she could not sleep, went upstairs where she saw Nichols, and sat with him on a chair. (Dkt. 5-6:7; 5-9:20.) Nichols "told her that he wondered what it was like to have a vagina because he did not have one, and asked her" if he could touch her. (Dkt. 5-6:7; 5-9:20–21.) She let him do so, "because, being so young, she did not think there was anything wrong with it." (Dkt. 5-3:10; 5-9:23.)

M.R.W. told Holzrichter that that was the only time that Nichols intentionally touched her vagina, but there was one other occasion when he "incidentally touched her unclothed vagina" during a sponge bath. (Dkt. 5-3:10; 5-9:23, 35–36.) She "admitted that it was hard for her to remember everything clearly, . . . and that many of her memories blended together." (Dkt. 5-3:11; 5-9:22, 29.)

"When the Madison police became involved in the case, they asked Holzrichter to conduct a second follow-up interview to clarify information, . . . and to get additional information on topics that had not been fully covered the first time." (Dkt. 5-3:11.) A second interview, which was also

videotaped, was conducted December 22, 2011, and this time a Madison police detective listened in on the telephone. (Dkt. 5-3:7, 11.)

During the second interview, M.R.W. told Holzrichter that "she had watched a recording of her first interview." (Dkt. 5-3:11; 5-10:11.) She can be seen on the video of the second interview "holding a pad of paper, which she continued to hold throughout the second interview." (Dkt. 5-3:11.)

In this interview, M.R.W. "went into more detail about what happened during the touching incident." (Dkt. 5-3:11.) She explained that on the night of the touching incident, she had found Nichols in a reclining chair, he patted his lap, and she climbed up onto it. (Dkt. 5-3:11; 5-10:13–14.) Nichols asked her if he could touch her vagina "[b]ecause he wondered what it was like to be a girl." (Dkt. 5-3:11; 5-10:14–15.) When she said yes, "Nichols asked her to unzip her pajamas, which she did." (Dkt. 5-3:11; 5-10:15.) She "did not remember what happened to the underwear she had on, but stated that Nichols touched her vagina inside and out with his hands." (Dkt. 5-3:11; 5-10:14, 16, 35.)

"Again, [M.R.W.] admitted that her memory was not the best, but assured Holzrichter that everything she said that day was true to the best of her recollection." (Dkt. 5-3:11; 5-10:31, 41–42.) "Holzrichter asked [her] if she had written down some things she was wondering about." (Dkt. 5-3:11; 5-10:46.) M.R.W. replied, "I wrote [down some] things that I think I, I changed from the last interview." (Dkt. 5-3:12; 5-10:46.) She told Holzrichter that "Nichols did

not suggest that she should take off her clothes" when they were wrestling, just that Nichols did not object when she would do so. (Dkt. 5-3:12; 5-10:46.) Holzrichter asked "if she felt that it was her fault that she did not object to any of this." (Dkt. 5-3:12; 5-10:46.) M.R.W. said she did, but said that she "felt better after she talked to her therapist about it." (Dkt. 5-3:12; 5-10:46.) At that time, "Holzrichter . . . stood up, walked toward the door, and suggested that [M.R.W.] should say goodbye to the people who were listening" on the phone. (Dkt. 5-3:12; 5-10:46.)

M.R.W., "with the pad of paper in her hand, said, 'First, can I tell you, um, the rest of this?'" (Dkt. 5-3:12; 5-10:46.) Holzrichter said, "Sure. We can do that and then I'm going to take a copy of it so that they can have it, too." (Dkt. 5-3:12; 5-10:46.) "At that point, the recording of the interview ended." (Dkt. 5-3:12.)

The State charged Nichols with first-degree sexual assault of a child for the touching incident. (Dkt. 5-6:3.) The recordings of both interviews were played at the trial, and the transcripts were provided to the jurors. (Dkt. 5-21:31, 48.) In November of 2013, the jury found Nichols guilty, and the court sentenced him to five years of probation. (Dkt. 5-6:3.)

Nichols filed a postconviction motion in May 2015, complaining "that the State failed to preserve and disclose exculpatory evidence"—whatever it was that M.R.W. had written on the pad of paper she had during the second interview (hereinafter "the list")—and that his "trial counsel was ineffective for failing to raise that issue before trial". (Dkt. 5-6:3.) The circuit court held a hearing on the matter and granted Nichols's motion. (Dkt. 5-2; 5-6:3–4; 5-27; 5-28; 5-29.) The court concluded that the list was not preserved by the State, that it could be assumed that the list contained additional exculpatory evidence, and the list could not be reliably recreated. (Dkt. 5-2:22–25.) The circuit court also concluded that the State acted in bad faith because it did not seek out and turn over the list. (Dkt. 5-2:25–27.) The court reasoned that Holzrichter concealed the list by ending the interview without discussing the list and by not providing the list to the authorities, and Detective Harris acted in bad faith when she produced a police report regarding the second interview that explained that the victim only had one correction. (Dkt. 5-2:25–27.) Because the circuit court concluded that the list could not be reliably recreated, it determined that the appropriate remedy was to vacate the conviction and dismiss the case with prejudice. (Dkt. 5-2:27–28.)

The circuit court also concluded that trial counsel was ineffective for failing to seek out the list, and for not moving for dismissal if the list could not be found. (Dkt. 5-2:28–29.) However, because the court granted reversal with

prejudice on due process grounds, the court reasoned that the ineffective assistance of counsel claim was moot. (Dkt. 5-2:29.)

The State appealed. (Dkt. 5-6:4.) The court of appeals reversed and remanded. (Dkt. 5-6:21.) The court of appeals first addressed the ineffective assistance of counsel issue "because there [was] no allegation that, prior to trial, the list had been discarded or lost." (Dkt. 5-6:5.) "And there [was] no developed argument that, in the absence of a request, the prosecution was required to disclose the list because it was in fact exculpatory, rather than merely potentially exculpatory." (Dkt. 5-6:5.) The court of appeals disposed of the ineffective assistance of trial counsel issue on the ground that Nichols failed to establish prejudice because he failed to establish that the list was potentially exculpatory. (Dkt. 5-6:6, 10–13.) This was so because Nichols failed to establish that the list would impeach M.R.W.'s credibility. (Dkt. 5-6:11.) The court of appeals reasoned that the list would have only bolstered M.R.W.'s credibility:

> The only reasonable inference from the facts—that M.R.W. had reviewed the first interview before participating in the second interview, and that she had a list of changes to make of some things she said in that first interview—is that she spoke accurately, truthfully, and consistently with her corrections, in the second interview.

(Dkt. 5-6:11.)

The court went on to explain that M.R.W.'s desire to be honest and accurate could only mean that the list of corrections would not have impeached anything she said in the second interview:

> More specifically, if she was telling the truth about the corrections, and through the corrections was making sure that what she had said in the first interview was accurate, then there is no basis to suspect that her detailed description of the touching incident in the second interview was not congruent with whatever corrections were on her list.

(Dkt. 5-6:11.)

Thus, "if the jury believed her statement that she got some things wrong in the first interview, they would have believed her more detailed description of the touching incident in the second interview." (Dkt. 5-6:11.) Nichols failed to present any evidence that the list would have established his innocence. (Dkt. 5-6:12.) The list was not exculpatory evidence. (Dkt. 5-6:12.)

Regarding the postconviction court's finding that the list was apparently exculpatory, the court of appeals concluded that there was "no basis in the record to support [that] finding" and "the exculpatory nature of the list was not apparent." (Dkt. 5-6:12–13.)

Nichols petitioned the Wisconsin Supreme Court for review. He raised issues regarding the appropriate standard of review and state procedure:

> 1.    Is a circuit court finding that evidence is apparently exculpatory a finding of fact, of law, or a mixed question of fact and law, and what is the appropriate standard of review?
>
>      . . . .

2.     Is a circuit court finding of bad faith a finding of fact, law, or a mixed question of fact and law, and what is the appropriate standard of review?

. . . .

3.     Is the District Attorney the representative of the State in the context of Filing a Notice of Appeal in a felony case?

. . . .

4.     Was the appeal in this case frivolous, and is Nichols entitled to remand for a determination of costs?

(Dkt. 5-7:7–8.)

Nichols did not petition the Wisconsin Supreme Court for review of the court of appeals' denial of his ineffective assistance of counsel claim and he did not petition the Supreme Court of the United States for certiorari.

On October 9, 2018, Nichols filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. 1.) He reraised his claims that the State's failure to retain the victim's list of corrections violated his due process rights, that counsel was ineffective for failing to seek the list, and argued that the trial court erroneously admitted evidence at his trial. (Dkt. 1:3.) The district court screened the petition and allowed Nichols to proceed on the two constitutional issues presented. (Dkt. 2.) The State opposed the petition, arguing that Nichols's ineffective assistance of counsel claim was procedurally defaulted by his failure to raise it in his petition to the Wisconsin Supreme Court and that the Wisconsin courts' rejection of his claims was neither contrary to nor an

unreasonable application of any clearly established Supreme Court precedent. (Dkt. 9.)

The district court denied the petition. (Dkt. 15.) It first found that Nichols's ineffective assistance of counsel claim was "procedurally defaulted because he failed to" present it to the Wisconsin Supreme Court, and that even if it had not been, it would fail on the merits because it was "premised on his due process claim," and that claim also failed on the merits. (Dkt. 15:7.) It then explained that the Wisconsin Court of Appeals applied the correct federal standards articulated in *Youngblood* and *California v. Trombetta*, 467 U.S. 479, 489 (1984), and that its holding that Nichols failed to show that the list had any exculpatory value was reasonable because M.R.W. never suggested during either the first or the second interview that the sexual touching did not happen, thus there was no reason to believe there was any materially exculpatory information on the list. (Dkt. 15:9–10.) It further deemed reasonable the Wisconsin Court of Appeals' finding that the only reasonable inference from the facts was that the list would have enhanced rather than diminished M.R.W.'s credibility, because it would have showed that she was speaking "accurately, truthfully, and consistently with her corrections, in the second interview." (Dkt. 15:10–11.) Accordingly, the Wisconsin Court of Appeals' conclusion that "the list was not material and would not have changed the outcome of the trial" was also reasonable because M.R.W.'s testimony about

10

the sexual assault was consistent with what she said in both the first and second interviews. (Dkt. 15:11.)

The district court noted that, at best, "M.R.W.'s list was plainly the sort of 'potentially useful evidence' referred to in *Trombetta* and *Youngblood*, not material, exculpatory evidence," and therefore Nichols could only establish a due process violation by showing that the State destroyed the list in bad faith. (Dkt. 15:11.) The court of appeals reviewed the forensic videos of both interviews de novo, as it is permitted to do under Wisconsin law, and rejected as speculative and contradicted by the record the circuit court's finding that the State acted in bad faith in failing to preserve the list, which was neither "well outside the bounds of permissible difference of opinion" nor was "contrary to 'the clear and convincing weight of the evidence' that is required to support habeas relief." (Dkt. 15:11–12 (citation omitted).) The district court observed that "bad faith requires more than carelessness; it requires a 'conscious effort to suppress exculpatory evidence,'" and Nichols had not presented any evidence of such an effort here. (Dkt. 15:12 (citation omitted).)

Finally, the district court concluded that "Nichols has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court." (Dkt. 15:13.) It thus denied a certificate of appealability. (Dkt. 15:13.) Nichols requested a

certificate of appealability from this Court, and this Court granted his motion on June 1, 2023. (7th Dkt. 7.)

## SUMMARY OF THE ARGUMENT

Nichols has not met his burden to show that he is due relief from his conviction and sentence under any portion of 28 U.S.C. § 2254. The Wisconsin Court of Appeals identified and applied the correct federal law, namely *Trombetta*, 467 U.S. 479, and *Youngblood*, 488 U.S. 51, to Nichols's claim that the State deliberately destroyed exculpatory evidence when it did not preserve M.R.W.'s list of corrections about her first interview that she brought to her second interview. It reasonably concluded that Nichols failed to show that the list had any exculpatory value because M.R.W. gave the same consistent and detailed account of the sexual assault during both interviews, meaning that the list of corrections would have only bolstered her credibility—it would have shown that this then-ten-year-old girl was diligently and scrupulously trying to ensure that she gave the details of something that had happened to her many years ago correctly. Nor was there any evidence that the interviewer or the detective believed the list was exculpatory or acted in bad faith to suppress the list. Its decision was based on a reasonable determination of the facts: the Wisconsin Court of Appeals looked to the record and found that the circuit court's contrary findings were unsupported by any evidence and thus clearly erroneous. And as the district court properly found, Nichols's ineffective

assistance of counsel claim was plainly procedurally defaulted because he failed to raise it in his petition for review to the Wisconsin Supreme Court.

Nichols has provided nothing to support his claim. His argument is little more than an assertion that the Wisconsin Court of Appeals misapplied Wisconsin law regarding the deference owed to a circuit court's factfinding on appeal. He further glosses over the fact that, before something can be described as either "apparently" or "potentially" exculpatory, it must be shown to have *some* exculpatory value. And he has not explained how the list had any exculpatory value or even how these corrections could have been useful as impeachment evidence; he merely quibbles with the language the Wisconsin Court of Appeals used when resolving his claim and points to the circuit court's contrary findings. That is an argument of semantics, not substance, and does not show that the Wisconsin Court of Appeals unreasonably applied federal law or that its decision rested on an unreasonable determination of the facts.

Finally, Nichols argues that his ineffective assistance of counsel claim is not procedurally defaulted on the theory that the Wisconsin Supreme Court could have addressed the claim sua sponte, but that fundamentally misunderstands the exhaustion and procedural default doctrines. It ignores the U.S. Supreme Court's clear and numerous pronouncements that federal habeas petitioners must fairly present their claims in a petition for review in a state's highest court, and that federal habeas courts cannot reach an exhausted but

procedurally defaulted claim absent a showing of cause and prejudice. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982); *Murray v. Carrier*, 477 U.S. 478 (1986); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). And Nichols has made no attempt whatsoever to show cause, prejudice, or a fundamental miscarriage of justice that would allow this Court to review his claim.

Even if Nichols were correct that this claim was not defaulted (and he is not), he does not address the merits of his ineffective assistance of counsel claim in his brief. Nichols cannot possibly meet his burden to show that the Wisconsin Court of Appeals unreasonably rejected this claim without even discussing either prong of *Strickland*.

The district court properly denied Nichols's Petition for a Writ of Habeas Corpus. This Court should affirm.

## STANDARD OF REVIEW

"When reviewing a district court's ruling on a habeas corpus petition, [this Court] review[s] the district court's factual findings for clear error and rulings on issues of law *de novo*." *Stern v. Meisner*, 812 F.3d 606, 609 (7th Cir. 2016). This Court reviews only "the decision of the last state court to rule on the merits" of the claim. *Id.* (citation omitted). Here, that was the Wisconsin Court of Appeals. (Dkt. 5-6; 5-8.) "This review is highly deferential; [this Court]

review[s] the Wisconsin appellate court's decision 'for reasonableness only.'"
*Stern*, 812 F.3d at 609 (citation omitted).

## ARGUMENT

I. **The Wisconsin Court of Appeals' rejection of Nichols's due process claim does not meet any of the standards for relief under 28 U.S.C. § 2254.**

A. **AEDPA requires a heavy measure of deference to be afforded to state courts' decisions on the merits of a federal constitutional claim.**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a state court judgment cannot be overturned by a federal court unless the habeas petitioner proves the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [U.S.] Supreme Court." 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof is on the petitioner throughout. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

This inquiry is an objective one, and "[a]n 'unreasonable application' of clearly established federal law is not synonymous with an erroneous decision." *Stern*, 812 F.3d at 610 (citation omitted). The state court decision must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Nichols must prove not only that the Wisconsin Court of Appeals was wrong to reject his challenges, but that the decision was "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision

conflicts with this Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

"A state court decision is contrary to clearly established federal law if the court applies a rule that plainly contradicts the Supreme Court's governing rule or if it comes to a result different than did the Supreme Court on substantially identical facts." *Avila v. Richardson*, 751 F.3d 534, 536 (7th Cir. 2014) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

A state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable way. *Payton*, 544 U.S. at 141; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013). When the habeas petitioner alleges that the state court unreasonably applied controlling Supreme Court precedent, it is not enough for him to prove that the state court was wrong; he must also prove that it acted unreasonably. *Richter*, 562 U.S. at 101; *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014).

A federal court may grant habeas relief on the alternative ground that the state court's adjudication of the constitutional claim "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations against the petitioner are, however, presumed correct. The petitioner overcomes that presumption only if he proves by clear

16

and convincing evidence that those presumptively correct findings are clearly wrong. 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 571 U.S. 12, 18 (2013).

"A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (citation omitted). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Titlow*, 571 U.S. at 18 (citation omitted).

"As a result, federal habeas relief from state convictions is rare." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017). "It is reserved for those relatively uncommon cases in which state courts veer well outside the channels of reasonable decision-making about federal constitutional claims." *Id*.

**B.    The district court properly determined that the Wisconsin Court of Appeals' decision did not rest on an unreasonable determination of the facts.[2]**

"A state court's determination of factual issues is presumed correct unless the petitioner rebuts this presumption by clear and convincing evidence." *Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir. 2005). To obtain relief on this basis, Nichols must show that the state court's determination of facts was

---

[2] Because whether an application of the law to the facts was reasonable necessarily requires the facts to which the law was applied to be reasonably found in the first instance, the State has addressed this ground for relief first.

*unreasonable*, meaning "lying well outside the bounds of permissible differences of opinion." *Morgan v. Hardy*, 662 F.3d 790, 800 (7th Cir. 2011) (citation omitted). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Id.* at 801.

Nichols complains that the district court was "too extravagant under habeas standards" in finding that the Wisconsin Court of Appeals "implicitly" found that there was no apparent exculpatory value to the list,[3] and did so reasonably. (Nichols's Br. 29–30.) He fails to explain what "too extravagant" means, however, or how it relates to the presumption of reasonableness applied to state court factual findings. (Nichols's Br. 29–37.) To the extent he believes that the district court should not have credited any implicit findings to the court of appeals, he is wrong. It has long been recognized that the rule that federal habeas courts presume the state courts reasonably found the facts "applies equally to findings of trial courts and appellate courts," *Wainwright v. Goode*, 464 U.S. 78, 85 (1983), and "[t]hat presumption applies not only to the state court's express factual findings, but also to the implicit resolution of a factual dispute that can be fairly inferred from the state court record."

---

[3] As the State explains below, these are not true factual findings but are questions of constitutional fact that are intertwined with the legal questions of whether something possesses exculpatory value and is material.

*Armstrong v. Young*, 34 F.3d 421, 426 (7th Cir. 1994). Nor does Nichols explain what "findings" were purportedly "implicitly" made by the Wisconsin Court of Appeals. (Nichols's Br. 29–37.) The court of appeals could not have been more *explicit*: it found that "[t]he only reasonable inference from the facts . . . is that [M.R.W.] spoke accurately, truthfully, and consistently with her corrections, in the second interview," and therefore "the list lacked any exculpatory value" because M.R.W. recounted the sexual assault "consistently and in detail in both interviews," meaning jurors would likely "view corrections by M.R.W. as favorable to M.R.W.'s credibility because it shows her to be someone trying to get all [the] details right."  (7th Dkt. 10:111–12.) There is nothing "implicit" about that finding.

Regardless of whether the Wisconsin Court of Appeals' factual findings were explicit or implicit, they are afforded a presumption of reasonableness that Nichols can only overcome by presenting clear and convincing evidence to the contrary. He has presented no evidence that would show that the list was apparently exculpatory or that the interviewer or detective acted in bad faith to destroy it, let alone anything that clearly and convincingly demonstrates that the Wisconsin Court of Appeals' findings were unreasonable.

Nichols's arguments about the Wisconsin Court of Appeals' "factfinding" are unpersuasive. First, he argues that the Wisconsin courts unreasonably found the facts premised on the lack of record cites in the Wisconsin Court of Appeals

19

opinion. (Nichols's Br. 30–31.) That premise is a nonstarter. The Wisconsin Court of Appeals never cites to the record in its opinions and is not required to do so. (Dkt. 9:19.) Second, Nichols claims that the Wisconsin Court of Appeals violated his due process rights when it made factual findings. (Nichols's Br. 31.) That claim is not before this Court. Nichols failed to raise any claim in the Wisconsin courts that his due process rights were violated by the court of appeals' method of review. (Dkt. 5-7.)

The record shows that the Wisconsin Court of Appeals reasonably rejected the circuit court's factfinding. There was no reasonable basis for a finding that the list was exculpatory because M.R.W. gave the same account of the assault during both interviews, and thus the only reasonable view was that the list of corrections: (1) would not have provided any basis for believing the sexual assault did not happen, and (2) would have bolstered M.R.W.'s credibility because it would show she was trying to ensure she was accurately reporting the incident. (7th Dkt. 10:110–13.) There was no basis in the record for the circuit court to find that the list was "apparently" exculpatory, meaning that finding was pure speculation. (7th Dkt. 10:112.) And the video conclusively showed that the circuit court's finding that the list was "apparently exculpatory" because the interviewer "hurried" to end the interview and not discuss the list was not supported by the video and was thus clearly erroneous. (7th Dkt. 10:112–13.) And while the Wisconsin Court of Appeals does appear

20

to have misunderstood what the circuit court meant when it said it was giving Detective Harris's testimony "no weight," that finding is immaterial in light of the court of appeals' reasonable conclusion that the list was not exculpatory at all, let alone apparently exculpatory—it does not matter if Harris failed to preserve the list in bad faith if the Wisconsin Court of Appeals reasonably found that it was not exculpatory.

At any rate, the court of appeals did not find facts; it applied the law to the facts in the record to review the postconviction court's determination that the list had an exculpatory value that was "apparent" to the investigator and the detective, and that they acted in bad faith to destroy it. (7th Dkt. 10:108–13.) In doing so, it applied state law that allowed the court to review the video recordings of M.R.W.'s interviews independently. (7th Dkt. 10:110–13 & n.3 (citing *State v. Jimmie R.R.*, 2000 WI App 5, ¶ 39, 232 Wis. 2d 138, 606 N.W.2d 196 (Ct. App. 1999)).) After reviewing the videos independently, the court of appeals found that the circuit court's factual findings that the list had an apparent exculpatory value, that it was recognized by the interviewer and the detective, and that they failed to preserve the list in bad faith, were clearly erroneous because they had no reasonable basis in the record. (7th Dkt. 10:111–13, ¶¶ 32, 36–37 (emphasis added) ("The *only reasonable inference from the facts*—that M.R.W. had reviewed the first interview before participating in the second interview, and that she had a list of changes to

make of some things she said in that first interview—is that [M.R.W.] spoke accurately, truthfully, and consistently with her corrections, in the second interview."; "As to the finding that the exculpatory nature of the list was 'apparent' to the Kansas interviewer, *we find no basis in the record to support this finding*."; "The video *simply does not support a reasonable view* that the interviewer hurried to change the subject.").)

That is precisely the standard for an appellate courts' rejection of a circuit court's findings under both Wisconsin and Federal law. *Royster-Clark, Inc., v. Olsen's Mill, Inc.*, 2006 WI 46, ¶ 11, 290 Wis. 2d 264, 714 N.W.2d 530 (observing that Wisconsin appellate courts "defer[] to the circuit court's findings of fact unless they are unsupported by the record and are, therefore, clearly erroneous"); *Campana Corp. v. Harrison*, 114 F.2d 400, 405 (7th Cir. 1940) ("Of course Federal Rule 52 does not require us to accept fact findings unsupported by the evidence."). To the extent that this can be considered "fact finding," it is entirely consistent with the normal course of appellate review.

Nichols seems to think that the Wisconsin Court of Appeals was required to accept the postconviction court's conclusions that the exculpatory nature of the list was apparent based upon the actions of the interviewer and detective in not disclosing the list. (Nichols's Br. 25–29.) Not so. The court of appeals concluded that the circuit court's finding that the list was exculpatory was unsupported by the record and was based upon speculation—M.R.W.

consistently stated in both interviews that the sexual touching occurred and that it occurred in a particular manner, and Nichols did not then and does not now explain how any corrections M.R.W. wanted to make about the initial interview during the second interview would undermine that testimony or her credibility. (Nichols's Br. 29–37, 52; 7th Dkt. 10:110–13.) That is not an unreasonable determination of fact; rather, that is the proper exercise by an appellate court reviewing a circuit court's factual findings. Findings of fact must rest on evidence, not speculation. *See Merco Distributing Corp. v. Commercial Police Alarm Co., Inc.*, 84 Wis. 2d 455, 267 N.W.2d 652, 655 (1978) *abrogated on other grounds by Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, ¶¶ 2–4, 403 Wis. 2d 1, 976 N.W.2d 263.

And Nichols has offered nothing showing clearly and convincingly that the Wisconsin Court of Appeals' determinations were unreasonable; therefore, he failed to meet his burden. His argument is really a claim that the Wisconsin Court of Appeals violated Wisconsin law in failing to properly defer to the circuit court's findings. (*See, e.g.*, Nichols's Br. 32 ("Accordingly, a reviewing court 'will "not reweigh the evidence or reassess the witnesses' credibility, but will search the record for evidence that supports findings the [circuit] court made, not for findings it could have made but did not."' . . . The Court of Appeals here did exactly the opposite." (quoting *State v. Young*, 2009 WI App 22, ¶ 17, 316 Wis. 2d 114, 762 N.W.2d 736)).) Thus, he argues, this Court should reverse

the district court because Nichols believes the circuit court's findings were supportable. (Nichols's Br. 31–37.)

That is not the standard for habeas relief. First, Nichols's complaint that the Wisconsin Court of Appeals should have more fully deferred to the trial court is a state law claim only. "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citation omitted). Second, this Court reviews only the last reasoned decision on the merits, which was the Wisconsin Court of Appeals' decision. Nichols can show that the Wisconsin Court of Appeals unreasonably determined the facts only by conclusively showing that there was *no reasonable basis in the record* for the *court of appeals'* findings. Merely pointing to the circuit court's contrary conclusions does not do that; as the Wisconsin Court of Appeals explained, the circuit court's findings were not based upon the evidence in the record.

Even so, merely pointing to the circuit court's conclusions means only that, at best, Nichols may be able to establish that there is more than one reasonable view of the record. The Wisconsin Court of Appeals' decision must stand on federal habeas corpus review "as long as it is one of several reasonable outcomes." *Barrow*, 398 F.3d at 603. Nichols points to the circuit court's rationale, but he offers no substantive evidence that the list was exculpatory. Nor does he provide any evidence showing that the interviewer or detective

24

failed to preserve it in bad faith. That fails to show that the Wisconsin Court of Appeals' decision rested on an unreasonable determination of the facts.

### C. The Wisconsin Court of Appeals reasonably found that the list was not apparently exculpatory and reasonably applied *Youngblood* when rejecting this claim.

Two U.S. Supreme Court cases address the criteria that courts must apply to determine when the State's failure to preserve evidence amounts to a due process violation: *Trombetta*, 467 U.S. 479, and *Youngblood*, 488 U.S. 51.

Under *Trombetta*, 467 U.S. at 488, due process is violated when the defendant shows that the State lost evidence that might be expected to play a significant role in the suspect's defense. To meet this standard, the evidence must "possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 489. Evidence does not have apparent exculpatory value if it would have provided "simply an avenue of investigation that might have led in any number of directions." *Hubanks v. Frank*, 392 F.3d 926, 931 (7th Cir. 2004) (quoting *Youngblood*, 488 U.S. at 57 n.*).

Under *Youngblood*, 488 U.S. at 57–58, the defendant establishes a due process violation if he shows that 1) the State lost or destroyed evidence that is potentially exculpatory; and 2) the evidence was lost or destroyed in bad faith.

There is a well-developed body of Wisconsin case law that follows and applies *Trombetta* and *Youngblood* when addressing whether the State's loss or destruction of evidence violates a defendant's due process rights. *See, e.g.*, *State v. Munford*, 2010 WI App 168, ¶¶ 20–21, 330 Wis. 2d 575, 794 N.W.2d 264; *State v. Greenwold*, 189 Wis. 2d 59, 525 N.W.2d 294, 297–98 (Ct. App. 1994). To put it succinctly, "[a] defendant's due process rights are violated if the police: (1) failed to preserve the evidence that is apparently exculpatory; or (2) acted in bad faith by failing to preserve evidence which is potentially exculpatory." *State v. Huggett*, 2010 WI App 69, ¶ 11, 324 Wis. 2d 786, 783 N.W.2d 675 (citation omitted).

This Court interprets *Trombetta* and *Youngblood* differently. *See McCarthy v. Pollard*, 656 F.3d 478, 484 (7th Cir. 2011) ("Our interpretation of *Trombetta* and *Youngblood* differs from that of Wisconsin courts."). This Court has concluded that *Trombetta* and *Youngblood* "stand for the same proposition." *Id.* at 485. A due process violation occurs if, in "the destruction of potentially exculpatory evidence . . . (1) the State acted in bad faith; (2) the exculpatory value of the evidence was apparent before it was destroyed; and (3) the evidence was of such a nature that the petitioner was unable to obtain comparable evidence by other reasonably available means." *Id.*

Thus, under this Court's interpretation of *Trombetta* and *Youngblood*, a defendant must establish that all three conditions—bad faith, apparent exculpatory value, and no alternative means—are present to show a due process violation. Under Wisconsin's interpretation, a defendant's burden appears to be less onerous: he needs to establish either that apparently exculpatory evidence was destroyed or that the evidence was potentially exculpatory and destroyed in bad faith.

This Court need not address which court formulated the rule correctly. The question is only whether the Wisconsin Court of Appeals' decision was contrary to or an unreasonable application of *Trombetta* and *Youngblood*. It was not.

Here the Wisconsin Court of Appeals properly relied upon, and expressly referred to, the controlling U.S. Supreme Court cases. (7th Dkt. 10:107–15.) Nichols quibbles that the court's conclusion that the list "lacked any exculpatory value" as opposed to concluding that the list was not "apparently exculpatory" or "potentially exculpatory." (Nichols's Br. 25–29.) Nichols ignores the specific conclusions of the Wisconsin Court of Appeals that he "failed to demonstrate that the list had potential exculpatory value" and "that the exculpatory nature of the list was not apparent." (7th Dkt. 10:110, 113.)

The court of appeals first addressed that the list did not have potential or apparent exculpatory value in the context of Nichols's ineffective assistance of counsel claim. The court began by noting "[n]either Nichols on appeal nor the

circuit court in its decision suggests that the list was exculpatory because the list may have corrected some fact in M.R.W.'s initial interview in a manner supporting the view that sexual touching did not happen." (7th Dkt. 10:110.) Rather, the argument had been that the list had potential exculpatory value as impeachment evidence of M.R.W.'s credibility. (7th Dkt. 10:110–11.) The court of appeals rejected that argument, agreeing with the State that the list "would have enhanced, not impeached, M.R.W.'s credibility." (7th Dkt. 10:111.) "The only reasonable inference from the facts—that M.R.W. had reviewed the first interview before participating in the second interview, and that she had a list of changes to make of some things she said in that first interview—is that she spoke accurately, truthfully, and consistently with her corrections, in the second interview." (7th Dkt. 10:111.) Nichols failed to demonstrate that "whatever else was on the list would tend to, or lead to evidence that would tend to, establish Nichols's innocence." (7th Dkt. 10:112.)

The Wisconsin Court of Appeals then rejected the postconviction court's conclusion that the exculpatory nature of the list was apparent. (7th Dkt. 10:112–13.) The court of appeals concluded it was improper for the postconviction court to infer from the interviewer's actions that the list was apparently exculpatory. (7th Dkt. 10:113.)

In its due process analysis, the court of appeals cited to controlling Wisconsin case law that adopted and applied *Trombetta* and *Youngblood*. (7th Dkt. 10:114–15.) The court then referred back to its *Strickland* prejudice analysis—where it concluded that the list lacked potential and apparent exculpatory value: "as we have already explained, the list lacked any exculpatory value." (7th Dkt. 10:115.)

The court of appeals' semantic shorthand, in concluding that the evidence had neither "potentially exculpatory" or "apparently exculpatory" value, does not mean that it applied a rule contrary to *Trombetta* and *Youngblood*. The court clearly knew the proper test—it discussed it when setting forth the law—and unquestionably applied it to reject the claim. *See Visciotti*, 537 U.S. at 24 (holding that the Ninth Circuit's failure to "acknowledge . . . the California Supreme Court's proper framing of the question" elsewhere in its opinion "as whether the evidence 'undermines confidence' in the outcome of [the proceeding]" was "inconsistent with the presumption that state courts know and follow the law").

Although the court of appeals may not have consistently used the "apparently exculpatory" and "potentially exculpatory" terminology, it cannot be said that the court of appeals' decision was "contrary to", i.e., "diametrically different" or "opposite in character or nature" or "mutually opposed" to the *Trombetta* and *Youngblood* standard. *Williams*, 529 U.S. at 405. The court of

29

appeals did not apply a rule that contradicts the governing law or arrive at a different result on a set of materially indistinguishable facts. It concluded that the list did not have potential or apparent exculpatory value because it had no impeachment value. Its decision wasnot contrary to or an unreasonable application of established Federal law.

Moreover, Nichols misconceives the basis of a due process violation. Even if the list had some impeachment value, *Trombetta* limits any due process claim involving the State's failure to preserve evidence to constitutionally material evidence – evidence which "both possess[es] an exculpatory value that [is] apparent before the evidence was destroyed" and where no comparable evidence is available to a defendant by other means. *Trombetta*, 467 U.S. at 488–89. Nichols failed to establish that the evidence could not have been obtained before trial by other means. Nichols was provided with the video of the second interview, where the list was discussed, before trial. Thus, he should have known about the list before trial. At the trial, after the recordings of both her interviews had been played, M.R.W. stated that her memory at that time was "about the same" as it was at the time of the first interview, and not "that much better or worse" than it was at the time of the second interview. (Dkt. 5-22:42.)

Therefore, before trial and even at the time of the trial, Nichols could have requested that M.R.W. recreate the list or could have asked her on cross-examination what she meant to correct from the first interview. Since Nichols never asked M.R.W. if she could remember and recreate her list of changes, he has not met his burden to prove that he is unable to obtain evidence comparable to the unpreserved evidence. The suggestion that a defendant can establish a due process violation by not seeking out comparable evidence, potentially because that evidence might not support his position, finds no support in the law.

### D.     If any error occurred in the Wisconsin courts, it was harmless.

Even if a state court's opinion was an unreasonable application of federal law, Nichols must still establish that he is entitled to the relief he seeks pursuant to the standard in 28 U.S.C. § 2254(a). *Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003). "Whether a given prisoner's custody violates the Constitution, laws, or treaties of the United States depends, first, on whether all substantive rules have been respected (the merit of the claim) and, second, on whether any error *caused* the custody." *Id.* If an error did not play a causal role in the conviction, it does not justify collateral relief. *Id.* "Nothing in the AEDPA suggests that it is appropriate to issue writs of habeas corpus even

though any error of federal law that may have occurred did not affect the outcome." *Id.*

The harmless error standard is defined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Under *Brecht*, a district habeas court may grant habeas relief when it concludes the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637 (citation omitted). In other words, the petitioner must show actual prejudice. *Id.*; *see also Hall v. Zenk*, 692 F.3d 793, 805 (7th Cir. 2012).

M.R.W.'s list of changes to some things she said at the first interview would only elevate her credibility, because her story about the actual assault remained consistent in both interviews and at trial. Thus, any error in not preserving and turning over the list was harmless. As argued in state court: "The fact that a ten-year-old girl, on her own, without anyone suggesting that anything she said at the first interview needed to be changed, took the initiative in drawing up a list of changes she thought should be made shows that MW was trying to be scrupulously honest and accurate about everything she said." (Dkt. 5-3:17.) M.R.W.'s list of changes would not impeach her credibility, given that she again relayed all of the relevant facts of Nichols's assault in the second interview. Nichols has not established otherwise. His three-sentence argument on this point says nothing about the evidence presented at trial and gives no explanation how any corrections to what

M.R.W. said in the first interview would have discredited what she said in the second or on the stand at trial. (Dkt. 5-22:26–35; Nichols's Br. 37.) It is his burden to show actual prejudice. He has not met the burden, and he is due no relief.

## II.    Nichols procedurally defaulted his ineffective assistance of counsel claim by failing to exhaust it in the Wisconsin courts, and has failed to show that the default should be excused.

Nichols's attorney filed a petition for review in the Wisconsin Supreme Court, and an examination of that petition reveals that this claim of ineffective assistance was not included. (Dkt. 5-7:3, 7–8.) Under *Boerckel*, 526 U.S. at 845, a habeas petitioner must give the state courts a full opportunity to resolve a federal constitutional claim "by invoking one complete round of the State's established appellate review process." In Wisconsin, this includes presenting the claim in a petition for review to the Wisconsin Supreme Court. *See Moore v. Casperson*, 345 F.3d 474, 484–86 (7th Cir. 2003). By omitting this claim from his petition for review, Nichols failed to fairly present and exhaust this claim and it is too late to do so now. *State v. Witkowski*, 163 Wis. 2d 985, 473 N.W.2d 512, 514–15 (Ct. App. 1991), prevents Nichols from returning to state court to relitigate the issue.

Unless Nichols can show cause and prejudice to excuse his default, or demonstrate that a fundamental miscarriage of justice will occur unless this court excuses his procedural default, this court cannot reach the merits of this

claim of ineffective trial counsel. *See Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). Nichols has not attempted to satisfy either the cause-and-prejudice or fundamental-miscarriage-of-justice escape hatch from procedural default. Rather, he argues, with no legal support, that his claim was not procedurally defaulted in the Wisconsin courts because the supreme court could have reached that issue if it had accepted the case. (Nichols's Br. 37–38.) He is wrong, about both Wisconsin and Federal law. *See Emer's Camper Corral, LLC v. Alderman*, 2020 WI 46, ¶ 44, 391 Wis. 2d 674, 943 N.W.2d 513 (holding that a petitioner cannot raise alternative legal theories to support their claims for relief that were not raised in the petition for review to the Wisconsin Supreme Court).

Even if the Wisconsin Supreme Court could have reached the issue, Nichols's position sidesteps his clear duties under fair presentment and exhaustion principles. And not surprisingly, Nichols cites no support for his proposition that generally petitioning a state supreme court for review on any ground satisfies habeas fair-presentment and exhaustion requirements. (Nichols's Br. 37–39.) That is undoubtedly because there is none. The U.S. Supreme Court held decades ago that a petitioner must raise a claim in a petition for discretionary review to the state's highest court to exhaust it for federal habeas purposes, and that the petitioner must do so with enough

34

prominence to alert the court to the federal nature of the claim. *Baldwin v. Reese*, 541 U.S. 27, 31 (2004).

Here, Nichols's petition for review never mentions an ineffective assistance of counsel claim. (Dkt. 5-7.) There is not even so much as a citation to *Strickland* anywhere in Nichols's petition. (Dkt. 5-7.) And the U.S. Supreme Court has unequivocally held that a petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Reese*, 541 U.S. at 32. Because Nichols has not shown cause and prejudice to excuse his default, and he has not demonstrated that a fundamental miscarriage of justice will occur if this court enforces his default, this Court cannot consider the merits of Nichols's ineffective assistance of counsel claim.

This Court could not consider the merits of this claim for another reason: Nichols failed to make any argument at all on either prong of *Strickland* in his brief to this Court. (Nichols's Br. 37–39.) The burden is on Nichols to prove his claims, not on the State to refute them. *Sturgeon v. Chandler*, 552 F.3d 604, 609 (7th Cir. 2009). By failing to brief this issue, Nichols has abandoned it. *Duncan v. State of Wis. Dept. Health & Fam. Serv.'s*, 166 F.3d 930, 934 (7th Cir. 1999). The State therefore will not discuss this claim further.

# CONCLUSION

Nichols has fallen far short of meeting his burden to show that the Wisconsin courts unreasonably rejected his constitutional challenges to his conviction. This Court should affirm the district court and deny Nichols's petition with prejudice.

Dated this 1st day of September 2023.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/Lisa E.F. Kumfer*
LISA E.F. KUMFER
Assistant Attorney General
State Bar #1099788

Attorneys for Respondent-Appellee

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2796
(608) 294-2907 (Fax)
kumferle@doj.state.wi.us

* *Counsel of Record*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), typeface requirements of Fed. R. App. P. 32(a)(5), and type style requirements of Fed. R. App. P. 32(a)(6).

This brief contains 8500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 13 point Century Schoolbook.

Dated this 1st day of September 2023.

Electronically signed by:

s/Lisa E.F. Kumfer
LISA E.F. KUMFER
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that on September 1, 2023, I electronically filed the foregoing Brief of Respondent-Appellee with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

I further certify that two copies of the above document were mailed to:

ANTHONY J. JUREK
STROUD, WILLINK & HOWARD, LLC
33 EAST MAIN STREET, SUITE 610
MADISON, WI 53703

Dated this 1st day of September 2023.

Electronically signed by:

s/Lisa E.F. Kumfer
LISA E.F. KUMFER
Assistant Attorney General